Barbara E. SHERMAN, Respondent,

v.

Bill J. SHERMAN, Appellant.

No. WD 38838.

Missouri Court of Appeals, Western District.

Sept. 1, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1987.

Application to Transfer Denied Dec. 15, 1987.

Preston L. Cain, Kansas City, for appellant.

Don Witt and Robert H. Shaw, Platte City, for respondent; Witt, Boggs, Shaw & Van Amburg, of counsel.

Before LOWENSTEIN, P.J., and PRITCHARD and TURNAGE, JJ.

PRITCHARD, Judge.

The issue is whether, upon dissolution, the trial court erred in awarding the wife, in a division of *marital property,* 27½% of the husband's disability benefits which were being received by him from a private policy held by him in the Mutual Life Insurance Company Long Term Disability Plan. This court holds that the trial court did so err.

The parties were married on June 25, 1970, but no children were born of the marriage. The husband, however, adopted two of the children of the wife by a prior marriage. The trial court found that these two children were emancipated at the time of dissolution, April 14, 1986, so no child support was awarded. Neither was any maintenance awarded.

The husband had been employed since July, 1967, and had solely made payroll contributions for the premiums on the Mutual Life disability policy, and a total of $1,300 was paid in premiums thereon, but the record does not show what portion of them was paid prior to (or during) the marriage. The husband was receiving $1,166.32 in monthly disability benefits (because of a heart condition) at the time of trial, which would be paid so long as he was disabled or until he reached age 65. At that age, disability payments would cease and he would start receiving about $433 per month from a deferred vested pension plan. His normal retirement date would be July 1, 1993. In addition to the Mutual Life disability payments, the husband was receiving $723 per month from social security. If he were able to go back to work, the disability benefits would cease.

The trial court ordered that the benefits of Union Mutual Life Insurance Company Long Term Disability Plan, and the pension plan vested in the husband from Burns and McDonnell Engineering Company be divided so that 27½% of the disability and pension was ordered to be paid directly to the wife.

Although there have been cases in this state holding that *pension* benefits may properly be divided, in appropriate cases, since that rule was adopted in *Kutcha v. Kutcha,* 636 S.W.2d 663 (Mo. banc 1982) [see, e.g., *Haun v. Haun,* 677 S.W.2d 927 (Mo.App.1984); *Lynch v. Lynch,* 665 S.W.2d 20 (Mo.App.1983); *Cregan v. Clark,* 658 S.W.2d 924 (Mo.App.1983); and *Weiss v. Weiss,* 702 S.W.2d 948 (Mo.App. 1986)], there are none which treat private disability insurance plans, such as the one at bar, as being subject to such division. Courts in other jurisdictions are divided on the question, with differing rationale. See generally, "In Sickness and in Health? Disability Benefits as Marital Property", 24 J.Fam.L. 657 (1985–86).

In *Guy v. Guy,* 98 Idaho 205, 560 P.2d 876 (1977), a community property state, a group term disability insurance policy to employee, Guy, was involved. The policy acquired no cash or loan value and the premiums were paid solely by the employer. The trial court had divided the net monthly benefits equally between the parties as community property under Idaho statutes. The Supreme Court affirmed, rejecting the California approach that disability insurance proceeds are separate property, holding, 560 P.2d p. 879, "In the case at bar, the benefits vested during the time of the marriage. Clearly community labor was the source of the benefits. Hence, we continue to look in Idaho to the source of the benefit rather than the purpose of payment analysis rationale of the California court in [*In re Marriage of Olhausen,* 48

Cal.App.3d 190, 121 Cal.Rptr. 444 (1975)]." The court said that the benefits were fringe benefits or emoluments of appellant's employment and therefore they derived from his community labors. The Idaho court also placed emphasis on its court's equitable powers and discretion to divide community property toward the end of achieving a just and equitable result.

In *Simmons v. Simmons,* 568 S.W.2d 169 (Tex.Civ.App.1978), a Delta Airlines pilot's long-term monthly disability benefits were provided by his employer. The court rejected his contentions that the benefits were for personal injury and that they were for loss of earning capacity after divorce, saying, p. 170, "Without question the payments made by Delta were community property since this contractual right was a part of his compensation during marriage because it was one of the benefits flowing from his employment with Delta."

Non-community property states have also taken the view that disability benefits are divisible marital property. *Smith v. Smith,* 84 Ill.App.3d 446, 39 Ill.Dec. 905, 405 N.E.2d 884 (1980), was there a case of first impression. In that case, the husband was employed as a pilot for United Airlines, and became disabled from a heart attack, receiving a "disability pension" of $2,367 per month. Although the opinion does not say so, presumably the disability provision was provided by United Airlines as a part of the husband's emoluments of employment. The court looked to the Illinois Marriage and Dissolution Act, and held, 405 N.E.2d p. 886, "As the subject disability pension does not *expressly* fall into an excepted category, it constitutes marital property if it can be characterized as property acquired during the marriage." The court then noted 405 N.E.2d at page 890[1], that longevity pensions in Illinois constitute marital property, saying further, "The disability pension at bar differs from such longevity pension only in its compensatory element, its mode of inception and possibly its duration. Given the classificatory directive of section 503(a), we hold the disability benefits at bar to similarly constitute marital property."

The Smith case cited and quoted from *Kruger v. Kruger,* 139 N.J.Super. 413, 354 A.2d 340 (1976), which involved both military retirement and disability benefits which the husband was irrevocably entitled to receive for life, holding that to the extent the entitlements were based upon military service during the marriage, they were subject to equitable distribution. The Kruger court rejected the claim that disability benefits offset current wages lost because of diminished earning capacity because there was no proof that the dollar work ability of the husband had been reduced.

In *Lookingbill v. Lookingbill,* 301 Md. 283, 483 A.2d 1 (1984), a fireman was retired as a result of a work-related injury, and was awarded an allowance under a retirement disability plan to which he had, during coverture, contributed by deductions from his wages for some years. The court affirmed a division of the disability benefits between husband and wife as constituting marital property by making an analogy between pension benefits which are "actually partial consideration for past employment", and holding, 483 A.2d at p. 4, "Pension payments are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability. Thus a disability plan, like a service plan, is property and, within the meaning of the Act, constitutes marital property subject to equitable distribution."

In *Morrison v. Morrison,* 286 Ark. 353, 692 S.W.2d 601 (1985), the court allowed a division of disability retirement benefits, to which husband became entitled as a result of his employment by the Los Angeles Fire Department, having contributed to the fund therefor 11% of his salary from 1965 through 1977. The court followed the Illinois Smith case, supra, in holding that the similar Arkansas statute mandates that all non-exempted property is marital property. Note the dissent in Morrison, 692 S.W.2d pages 604–05, "The common sense and equitable approach is to treat disability benefits as income when received. Such benefits should be considered when making awards for support and alimony. * * * It

is neither just nor equitable to award the healthy spouse, who is able and qualified to work, half the payments the injured party is receiving for disability and pain and suffering."

In *In re Marriage of Kosko*, 125 Ariz. 517, 611 P.2d 104 (1980), the court held that disability benefits should be treated as the separate property of the receiving spouse after dissolution. At 611 P.2d page 105, the court noted the difference between retirement and disability benefits saying, "The amount paid to protect against [the latter] risk does not accumulate in a fund, nor does it build into an equity having an ascertainable value. Although the entitlement to this benefit may be attributed to employment and thus have a community origin, the money so expended does not produce a community asset subject to division at dissolution. What it produces is coverage for the *individual spouse* against the risk of disability and loss of future earning ability. Disability benefits, then, are a substitute for earnings in the event of disability. Just as the post-dissolution earnings of a spouse are separate property (citing case), so then it is logical that post-dissolution benefits are separate property."

California courts have held that disability benefits are not community property subject to being divided upon dissolution of marriage. In *In re Marriage of Olhausen*, 48 Cal.App.3d 190, 121 Cal.Rptr. 444, 446 (1975), the court said, "[T]he law provides for a disability benefit payable to Alan, and nothing more." In the case of *In re Marriage of Saslow*, 40 Cal.3d 848, 221 Cal. Rptr. 546, 710 P.2d 346 (1985), the husband, an allergist in private medical practice, had, during the marriage, purchased several disability insurance policies, paying the premiums thereon with community funds. While the parties were still married, the husband began to receive benefits under the disability policies, which the trial court found to be his separate property, but ordered him to pay one-half the benefits as spousal support. The court cited the earlier case of *In re Marriage of Stenquist*, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978), where the husband lost a limb, but remained in military service for 17 more years, at which

time his retirement pension had vested, and the Army began paying him the 10% more disability benefits. The Stenquist court held that only the portion of the disability benefits which exceeded the regular retirement pension were the husband's separate property. The Saslow court followed the Stenquist rationale and reversed the trial court with a remand to determine the portion of the benefits which were intended to provide retirement support which must be denominated community property, and alternatively, to determine the portion of benefits which were intended to replace the husband's lost earnings because of his disability, which must be considered his separate property. At 40 Cal.3d 861, 221 Cal. Rptr. 546, 710 P.2d 346, the court did note that the primary purpose of disability benefits is to compensate the disabled spouse for lost earnings—earnings which would normally be separate property after dissolution. In the Saslow case the issue to be determined upon remand was whether the disability insurance policy was intended to be retirement income or to be considered as replacement of lost income by reason of the doctor's disability, and to determine what portions of each was to be denominated in each category. Here, the husband was provided retirement benefits from his employment, so there is no necessity to consider whether any portion of the disability insurance policy was intended to be in the same category. It seems clear that the disability provision should be considered to be a replacement of the husband's lost earnings—thus his separate property.

In *Ramsey v. Ramsey*, 474 S.W.2d 939 (Tex.Civ.App.1971), it was held that Veterans' Administration benefits for service-connected disability were the husband's separate property, because, unlike retirement benefits, they were not accumulated as the result of the joint efforts of the spouses. In *Mosley v. Mosley*, 682 S.W.2d 462 (Ky.App.1985), the court held that the husband's United Mine Workers' pension was marital property, but his workers' compensation black lung benefits were his separate property, they not having been received prior to dissolution. In *Leighton*

v. *Leighton*, 81 Wis.2d 620, 261 N.W.2d 457, 464, et seq. (1978), the court held that the husband's service-connected Veterans' Disability pension was not an asset to be divided between the parties, but was material only on the husband's ability to pay alimony. See also *Rickman v. Rickman*, 124 Ariz. 507, 605 P.2d 909 (1980).

The review of the above representative cases reveals that there is no clear rule as to when private disability insurance payments may or may not be treated as marital property. In this case, however, the husband's disability policy was not derived as an incident of his employment with Burns and McDonnell. That firm apparently did make the policy available to him, but did not pay any part of the premium thereon. The disability payments were not a partial consideration for past employment, as is the case of pension benefits. The rationale of the *Mosley* and *Kosko* cases, supra, best fits the peculiar facts of this case in that the amount paid for the policy does not accumulate in a fund so as to have an ascertainable value for division. The disability benefits are a substitute for the husband's lost earnings occasioned by his inability to work, and are the same as post-dissolution earnings which are specifically non-marital property under § 452.330.2(3). Here, the disability payments will cease if the husband is no longer disabled or should he again become employed, and they will cease when he becomes of retirement age and becomes entitled to his vested pension, which the trial court very properly divided under the *Kutcha* case and its progeny, supra.

The trial court divided marital property of $9,138.91 to the wife and $11,420.00 to the husband, and ordered that each party pay their individual debts. No issue is presented as to that division, and although some of the $1,300 premiums paid on the disability insurance policy were paid from marital earnings (payroll deductions) of the husband, no issue is presented as to any portion of the premiums paid being marital property. No remand is necessary.

The judgment awarding the wife 27½% of the disability insurance benefits of the husband is reversed.

All concur.