Beverly **PAULEY**, **Plaintiff–Respondent**,

v.

William **PAULEY**, **Defendant–Appellant**.

**No. 54647.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 23, 1989.

Vernon R. Dawdy, Fenton, for defendant-appellant.

Nelson B. Rich, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

William E. Pauley (husband) appeals from the decree dissolving his marriage to Beverly A. Pauley (wife). Husband challenges the award of marital property, child custody and support, and attorney's fees to wife. We affirm in part and reverse and remand in part.

Husband and wife were originally married in November 1975. They divorced in 1982, but remarried in June 1984. They separated in December 1986 and divorced again in February 1988. The trial court gave neither party maintenance, ordered husband to pay $20.00 per week for support of each of their five children and divided marital property which it valued at "$93,000.00 plus pending claims."

Husband's first point launches a two-fold attack on the distribution of marital property. He claims the trial court failed to set apart to the parties their separate property and that its division of the marital property was unfair, unjust, and unsupported by the evidence.

In its decree, the trial court ordered that wife receive (1) real estate at 3438 Iowa in the City of St. Louis; (2) one-half of husband's then pending personal injury settle-

ment; (3) one-half of husband's still pending claim under the workers' compensation Second Injury Fund ("Second Injury Fund"); (4) a 1972 motor home; (5) a 1976 Ford station wagon; (6) a 1971 boat, motor and trailer; and (7) all of the parties' furniture and personal property at their residence on 4407 Norfolk in the City of St. Louis.

The court further ordered wife receive $8,913.50 from husband as her remaining share of husband's workers' compensation claim of $36,750.00 which he had received in June 1987 after the parties' separation in December 1986 but prior to the divorce in 1988. However, this portion of the decree was deemed to be satisfied upon husband's delivery to wife of the 1972 motor home. The 1972 motor home and boat with motor, as well as an all-terrain vehicle, had been purchased by husband prior to the dissolution hearing with the proceeds of his workers' compensation recovery.

Husband was awarded a 1979 Honda automobile, real estate at 4407 Norfolk in the City of St. Louis, personal property in his possession and one-half of the net proceeds of his pending personal injury and Second Injury Fund claims. Following the February 1988 entry of the dissolution decree, husband received $51,440.00 in April 1988 for his personal injury claim. He received $24,000.00 from the Second Injury Fund sometime after September 7, 1988.

█ The gist of husband's complaint is that the trial court erred by dividing as marital property the benefits he had not yet received from the Second Injury Fund and the property purchased during the marriage with a portion of his workers' compensation benefits. He argues that the payment he received under workers' compensation as permanent partial disability reflects future lost wages and lost earning power. Although he received such benefits in a lump sum, the benefits received were calculated on a weekly basis. He concludes that his workers' compensation permanent partial disability benefits and his award under the Second Injury Fund were disability payments and non-marital in

character, so they should have been set aside to him as his separate property.

Wife responds that the $36,750.00 lump sum workers' compensation distribution received by husband during the marriage was marital property because the amount husband received was in partial consideration of his past employment. She further states that husband spent the money he had received for his permanent partial disability during the marriage to buy items including a truck, boat, trailer and an all-terrain vehicle. Wife concludes that even if the disability payments were not originally marital property, husband transmuted the character of the funds by these subsequent purchases, so that the trial court properly divided these assets between the parties as marital property. She adds that his Second Injury Fund claim arose out of the same injury during the marriage, and thus, was essentially derivative of his original workers' compensation claim so that the Second Injury Fund was properly divided as marital property.

The question whether workers' compensation disability benefits received after the parties' separation but prior to entry of the dissolution decree are marital or separate property appears to be one of first impression, as is the question whether workers' compensation disability benefits received after the divorce (the Second Injury Fund award) may properly be divided as marital property in the dissolution decree. Our research discloses no cases in Missouri which squarely address this issue.

Husband relies primarily upon *In re Marriage of Medlock*, 749 S.W.2d 437 (Mo. App.1988), and also *Sherman v. Sherman*, 740 S.W.2d 203 (Mo.App.1987). In *Medlock* the husband alleged trial court error in its valuation and division of the pension plans owned by the parties and, in particular, the trial court's determination that wife's union "pension" of $250 per month which she claimed she received as "disability" had a present value of $20,000.00. 749 S.W.2d at 440. The appellate court held husband was bound by the trial court's valuation. *Id.* In dicta, the court added that wife's monthly payment "may not even be marital prop-

erty". *Id.* Citing *Sherman v. Sherman*, 740 S.W.2d 203 (Mo.App.1987), and *Kuchta v. Kuchta*, 636 S.W.2d 663, 666 (Mo. banc 1982), the court observed pension and retirement benefits are marital property if the retirement plan is acquired during the marriage, but that "disability" connotes money representing lost earnings occasioned by an inability to work, equivalent to post-dissolution earnings, and non-marital property. *Medlock*, 749 S.W.2d at 441. The court, after concluding neither party furnished sufficient information about the monthly payments to establish conclusively their marital character, *id.*, declined to interfere with the trial court's apportionment of the assets. *Id.* at 445.

The dicta of *Medlock* is of little assistance to this court and *Sherman* is readily distinguishable because it dealt with monthly benefits, not a lump sum award as is the case here. A more important distinction in *Sherman* is that it also involved benefits that were not only *received* but which also *accrued* after the dissolution of the marriage. Here, the workers' compensation permanent partial disability benefits were awarded as a lump sum *before* dissolution. In this case, only the lump sum of the Second Injury Fund recovery was made after the parties' dissolution of marriage.

*Mosley v. Mosley*, 682 S.W.2d 462 (Ky. App.1985), and *In re Marriage of Kosko*, 125 Ariz. 517, 611 P.2d 104 (1980), cases from other jurisdictions which appellant cites, are both discussed in *Sherman* and involve fact patterns nearly identical to *Sherman*, and we find them no more dispositive or enlightening than *Sherman*.

Several commentators have addressed the treatment of disability benefits as marital property. *See generally Note*, "In Sickness and In Health? Disability Benefits as Marital Property," 24 J.Fam.L. 657 (1986); *Note*, "Workers' Compensation—Marital Property," 10 N.Ky.L.Rev. 531 (1983). Other jurisdictions have also addressed this issue as one of first impression, including Alaska, Florida, Maine and Maryland. *See Miller v. Miller*, 739 P.2d 163 (Alaska 1987); *Weisfeld v. Weisfeld*, 513 So.2d 1278 (Fla.D.Ct.App.1987); *Cummings v. Cummings*, 540 A.2d 778 (Me.1988); *Queen v. Queen*, 308 Md. 574, 521 A.2d 320 (1987).

Both the *Weisfeld* and *Queen* cases treat the issue exhaustively and in scholarly fashion; however, *Queen* is more nearly akin to the circumstances in the case at bar. *Queen* also involved a husband's contention that his lump sum permanent partial disability settlement received from his workers' compensation claim prior to the entry of a dissolution decree was not marital property. The court first acknowledged the majority view that workers' compensation benefits awarded before the parties' divorce for work-related injuries occurring during the marriage are marital property. *Queen*, 521 A.2d at 324. The court noted, however, that courts are divided where the workers' compensation periodic payments extend beyond the dissolution of the marriage or a lump sum award is made after the divorce. *Id.* In determining whether the permanent partial disability award was marital property "acquired" during the marriage, the court considered not only the date of the award, but also the nature of the benefit which it represents. *Id.* at 326.

Its analysis of the pertinent sections of the Maryland Workmen's Compensation Act, Maryland Code (1985 Repl.Vol.) Art. 101, closely paralleling our own Missouri Workers' Compensation Act, § 287.010–.855 RSMo 1986 and Supp.1988, prompted its determination that the husband's lump sum permanent partial disability award represented an amount based on the loss of future earning capacity and not merely upon the loss of wages. *Queen*, 521 A.2d at 326–27. The court held that "only that portion of the husband's award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribution by the trial judge." *Id.* at 327. Focusing on the personal nature of the injuries giving rise to a permanent partial disability award, the court concluded that the legislature did not intend "a noninjured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage." *Id.*

*Weisfeld* is in accord with the result reached in *Queen*, describing its analysis as the "analytical approach." Under the analytical approach, whether the award is marital property does not depend on a formalistic view which looks only to the timing of the acquisition of the award; instead, the inquiry focuses on the elements of damages the particular award was intended to remedy, the purpose of the award. *Weisfeld*, 513 So.2d at 1281. *Weisfeld* contrasts this approach with the "mechanistic approach" stating that all property, including workers' compensation or personal injury awards, acquired during marriage is deemed to be marital property unless it is specifically excepted by statute. *Id.* We agree with *Weisfeld* that the analytical approach appears to be the more enlightened view. *Id.*

*Miller v. Miller*, 739 P.2d 163 (Alaska 1987) utilized the same analytical approach in determining whether a lump sum settlement for a permanent partial disability under the workers' compensation program not yet received by husband was joint or separate property. The Alaska Supreme Court held that a workers' compensation disability award is marital property only to the extent that it compensates for loss of earnings during the marriage. *Id.* at 165. To the extent that a workers' compensation award compensates for loss of post-divorce earnings, it must be considered separate property even if the compensable injury occurred during the marriage. *Id.* The court echoed the same policy rationale articulated in *Queen*. The timing of husband's receipt of the award *after* the divorce apparently had no bearing on the court's decision.

In *Cummings v. Cummings*, 540 A.2d 778 (Me.1988), the husband suffered a work-related injury shortly after the marriage. He was receiving workers' compensation benefits on a weekly basis when the parties divorced. In its decree, the trial court noted the reasonable probability that in the near future husband would negotiate a lump sum settlement of his workers' compensation claim. The trial court proceeded to award each party fifty percent of any lump sum settlement husband might re-

ceive in the future as the result of his injury during their marriage. The intermediate appellate court reversed, concluding that the potential lump sum award had been erroneously characterized as marital property and that, in the event of a future settlement, the entire sum was to be set aside to husband as his separate property. 540 A.2d at 779.

The Supreme Court of Maine affirmed the appellate court's decision. The Supreme Court noted:

[w]orkers' compensation benefits are awarded an injury that was sustained while one was employed and, although that event may have occurred during the period of marriage, the compensation is awarded to replace the injured employee's loss of ability to work in the future. [citations omitted] Such payments are not earned as compensation for working but are paid to aid workers who will have diminished future earnings due to a work-caused injury or disease. Because this loss of earning capacity during marriage relates to the earning power of the community, payments that are received or weekly benefits that have actually accrued but have not yet been paid as of the date of the dissolution of the marriage are to be included as marital property, just as earned income. [citations omitted]

... However, workers' compensation awards paid after the marriage has been dissolved is [sic] compensation for wages that otherwise would be earned by and paid to the injured worker during the period after marriage that the worker was disabled. Therefore, benefits that *accrue* and *are paid after* the termination of the marriage are no more a part of the marital property than are the worker's future earnings. (Emphasis added.) 540 A.2d at 779–80.

In keeping with the analytical approach espoused in *Weisfeld* and followed, with some variation in *Queen, Miller,* and *Cummings,* we hold that the lump sum awards to husband of workers' compensation benefits and of the Second Injury Fund are non-marital assets to be set aside to hus-

band as his separate property to the extent these awards compensate husband for future loss of earnings that have accrued since the dissolution of the parties' marriage. We reverse and remand the case to the trial court to determine what portion of husband's awards are marital property subject to equitable distribution in accordance with the analytical approach utilized in *Queen* and *Weisfeld.*

In a subpoint of his claim that the trial court erroneously included his workers' compensation settlement and Second Injury Fund award as marital property, husband also attacks the marital property award as unfair and unjust, focusing primarily on the one-half division of his personal injury claim. He emphasizes that only three months elapsed between the date of the accident giving rise to his personal injury claim and the parties' separation in December 1986; that wife ridiculed husband's infirmities during this period; and that wife was able-bodied, readily employable, while husband was seriously disabled, unable to work. Husband also challenges the valuation of the marital property as $93,000.00. He observes that nowhere in the record were property values ever delineated and no evidence established the value of his personal injury claim.

The trial court made no findings to indicate what factors it considered under § 452.330 RSMo 1986 in dividing the marital property. The trial court did not make, nor did the parties request, findings of fact assigning values to all the property. Husband provides no values to dispute the trial court's valuation. Absent specific request for findings, the trial court is not required to assign value to each item of marital property. *Dardick v. Dardick,* 670 S.W.2d 865, 868 (Mo. banc 1984); *Russo v. Russo,* 760 S.W.2d 621, 626 (Mo.App.1988). Under these circumstances, all fact issues shall be considered as having been resolved in accordance with the result reached. *Russo,* 760 S.W.2d at 623.

Since we are reversing the trial court's decree which erroneously included all of husband's workers' compensation awards as marital property, we need not address this aspect of husband's complaint with the division of marital property. On remand the trial court's reapportionment of marital property may assuage husband, and husband is free to ask for findings of fact which he did not request originally.

■ The record here reflects that wife has primary physical custody of the parties' minor children. The record is replete with evidence of the distressed economic situation of both parties. Also documented is husband's marital misconduct, including his history of assaults upon both wife and their minor children, as well as his squandering of his workers' compensation award without regard for his family's needs. Wife will be compelled to struggle financially to manage for their children and herself whatever the division. We consider the trial court's division of marital property, but for its erroneous inclusion of certain non-marital assets, to have been just.

■ Husband's second point faults the trial court for its order of child support and child custody regarding the three oldest of the parties' five children. These three children were born of the parties' first marriage. Husband contends the trial court lacked jurisdiction to enter custody and support orders for these children. Husband apparently believes that a separate motion to modify the original dissolution decree of 1982 is required for any custody or support determination concerning these three children.

An original divorce decree and any subsequent modification thereof as regards child custody are final and binding and cannot be disturbed except upon due proceedings and a hearing for that purpose. *Ex Parte J.A.P.,* 546 S.W.2d 806, 808 (Mo. App.1977). The petition for dissolution of marriage alleged there were five minor, unemancipated children born of the marriage. Husband admitted these allegations in his answer. The new petition for dissolution of the parties' subsequent marriage put the issues of child custody and support before the court, just as a motion to modify would have invoked the court's continuing jurisdiction to make such changes. Judicial economy bespeaks the logic of having the same judge hearing the dissolution proceeding involving custody of the parties'

children born of their marriage in 1984 as well as those three children born of the parties' earlier marriage in 1975 which was dissolved in 1982. Point denied.

■ Husband's third point challenges that portion of the decree ordering him to pay $2,000.00 for attorney's fees for wife. He disputes his ability to pay, not the reasonableness of the award, and claims wife is better able to afford the fees because she has the ability to support herself in the future while husband is disabled and has been unemployed since 1984.

The trial court is an expert on the issue of attorney's fees and is given wide latitude in the allocation of fees and costs. *Mills v. Mills*, 663 S.W.2d 369, 374 (Mo. App.1983). A decision of the trial court regarding attorney's fees will be reversed only upon a finding of manifest injustice. *Id.* In making the award, the court is to consider all the relevant factors, including financial resources and conduct during the marriage. *Klenke v. Klenke*, 742 S.W.2d 621, 625 (Mo.App.1987). It is husband's burden to show the trial court abused its discretion in the award. *Golleher v. Golleher*, 697 S.W.2d 547, 551 (Mo.App.1985).

Here, husband neither objected to the fee statement of wife's attorney, nor asked any questions about it being excessive. In addition, a substantial portion of the attorney's fee for wife was occasioned by the husband's intransigence during the dissolution proceedings.

The award was authorized by § 452.355 RSMo 1986, and the amount awarded did not constitute an abuse of discretion. Under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we find no error. Point denied.

The judgment of the trial court is affirmed in part and reversed and remanded in part for determination of what portion of husband's workers' compensation awards constitute marital property.

SMITH, P.J., and SATZ, J., concur.