**Charles R. SCHAFFER, Petitioner/Respondent,**

v.

**Linda M. (Schaffer) HAYNES, Respondent/Appellant.**

**No. 61098.**

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 15, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1993.

Application to Transfer Denied March 23, 1993.

Alan J. Agathen, Clayton, for respondent/appellant.

Claude C. Knight, Knight, Schoeneberg & Tomich, St. Charles, for petitioner/respondent.

GRIMM, Judge.

In March, 1988, following an 18–year marriage, the parties' marriage was dis-

solved. Pursuant to stipulation of the parties, wife received custody of their two children, then ages 9 and 5, husband was awarded visitation rights, and the marital property was divided.

About a year later, the parties began filing motions and counter motions. In September, 1991, the trial court heard (1) wife's motions for contempt and to modify visitation and temporary custody, and (2) husband's motions for contempt, to abate child support, and for modification of custody.

In addition, during the hearing of these motions, husband presented evidence concerning, and made oral motions for, a reduction in his child support obligation, a credit for his payment of wife's bills, and a credit for checks wife cashed that were made payable to him and to his corporation. Before the close of evidence, the trial court sustained husband's motion to amend the pleadings to conform to the evidence.

The trial court denied wife's motions. The trial court sustained husband's motion to abate child support but denied his motion for modification of custody. Based on husband's amended pleadings, the trial court sustained husband's motions for a reduction in child support and a credit for payment of wife's bills and checks that wife cashed. The trial court also ordered wife to pay husband's attorney fees.

On appeal, wife raises seven points. We grant her point concerning trial court error in modifying the distribution of property, but deny all others. Thus, we affirm in part and reverse and remand in part.

## I. Division of Marital Property

For her first point, wife alleges the trial court erred when it set "aside husband's obligation to pay wife $70,000 from the sale of the Graham Road property on the basis of mutual mistake of fact in that: (A) awards of marital property cannot be modified; (B) the doctrine of mistake of fact

does not apply to modification of decrees (as opposed to contracts); (C) a mistake of fact which would justify the modification of a contract relates to mistake as to an existing or past fact, not as to a future event."

Section 452.325.1 [1] authorizes parties to enter into a written separation agreement providing for, among other things, "the disposition of any property owned by either of them." If the trial court finds that the agreement is not unconscionable as to support, maintenance, and property, and the agreement does not provide to the contrary, the trial court must include the terms of the agreement in the dissolution decree and order the parties to perform them. § 452.325.4(1).

Here, the parties entered into a written stipulation that divided their property. Pertinent to the point wife raises, the agreement provides:

> [Husband] shall have Construction Management Services [2] pay to [wife] the gross sum of $70,000 reduced by income taxes when Construction Management sells the building at Graham Rd which is under contract to Lloyd Tomer. And [husband] will be responsible for same if Construction Management fails to make said payment.

Pursuant to § 452.325.4(1), the trial court found that the stipulation was not unconscionable and incorporated it into the dissolution decree. Thus, the terms of the stipulation are enforceable as a judgment. *See* § 452.325.5.

Husband moved to have this stipulation set aside on the basis of mutual mistake; namely, that the sale of the Graham Road property would yield over $300,000 in profits.[3] That contract was not closed. The trial court found that when the property did sell, the sale yielded a profit of only $18,833.

The trial court held that when the parties entered into their stipulation they were "under a mutual mistake of fact as to the

---

1. All statutory references are to RSMo 1986, unless otherwise specified.

2. The dissolution decree awarded husband all stock in Construction Management Services.

3. At the hearing, wife testified she anticipated the sale would yield profits of $325,000, while husband believed the sale would yield profits of $414,000.

actual selling price of [the] property." Thus, the trial court held that it would be "inequitable and unfair" to require husband to pay wife $70,000. Therefore, the trial court found "that the percentage of the profits which were to be paid to [wife] amounted to 16.8% and that [husband] did in fact owe [wife] the sum of $3,164.00 at the time of the sale of the Graham Road property."

We note, however, that the stipulation and decree do not speak in terms of a percentage of profits. Rather, they merely say that wife receives "the gross sum of $70,000 reduced by income taxes when Construction Management *sells* the building." (emphasis added).

The trial court's order was essentially a modification of the distribution of marital property. Section 452.330.4[4] strictly forbids modification of division of property. This section states: "The court's order as it affects distribution of marital property shall be a final order *not subject to modification.*" (emphasis added). *See also* § 452.360.2; *Leventhal v. Leventhal,* 629 S.W.2d 505, 507 (Mo.App.E.D.1981).

In *Stark v. Thierjung,* 714 S.W.2d 830, 832 (Mo.App.E.D.1986), this court held that this rule applies where the parties, as here, entered into a settlement agreement that was incorporated into the decree. There we said, when the terms of a "separation agreement are incorporated into a dissolution decree, the court does not retain the power to modify them.... A trial court has no authority to modify the property disposition provisions of a decree of dissolution after it has become final." (citations omitted).

Here, the decree was entered and became final in 1988. Because § 452.330.4 forbids the action the trial court took, we must reverse.[5] *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Pursuant to the dissolution decree, wife is entitled to "the gross sum of $70,000 reduced by income taxes." The net amount due wife after income taxes on $70,000 is not clear from the record. Therefore, we remand to the trial court so that it can determine the amount of income taxes to be deducted from the $70,000 and enter its order accordingly.

## II. Amendment of Pleadings to Conform to the Evidence

For her second point, wife contends that the trial court erred when it modified "the child support award retroactive to May 25, 1989, because such was a misapplication of the law regarding retroactivity in that husband did not make his request for reduction of child support until the time of the hearing in September 1991."

At the hearing, both husband and wife testified that husband earned approximately $125,000 to $150,000 a year at the time of dissolution. Husband was self-employed, buying and selling real estate. Husband said that after the dissolution, the real estate business "went down the tubes." As a result, husband and his accountant said he did not have any earned income in 1989.

Husband further testified that in 1990, he found a job and earned $40,000. The following exchange then occurred between husband and his counsel:

Q. Okay. And with regard to that, regardless of what the Court does on seeking custody, you are asking [for] retroactive reduction of your child support and payment of tuition to private schools and that sort of thing?

A. That's correct.

Husband then testified that at the time of the hearing he was unemployed. The above testimony was repeated later in hus-

---

4. Although § 452.330 was amended in 1988, the amendment is not pertinent to our discussion.

5. We note that in *Ludlow v. Ahrens,* 812 S.W.2d 245 (Mo.App.W.D.1991) and *McDaniel Title Co. v. Lemons,* 626 S.W.2d 686 (Mo.App.W.D.1981), the Western District used contractual principles to consider appeals involving property settlement agreements that were incorporated into dissolution decrees. In neither case, however, were contractual principles successful in setting aside a provision of such agreements.

band's testimony. Wife's counsel did not object to any of this testimony.[6]

Husband's attorney also questioned wife concerning her taxable income for the years 1989, 1990, and 1991. Wife's attorney made no objection.

Before the close of the evidence, husband's counsel asked the court to take judicial notice that May 25, 1989, was the date husband filed his motion to abate child support. Counsel also moved that the pleadings be amended to conform to the evidence. Without objection, the trial court granted the motions.

Rule 55.33(b) provides in pertinent part: "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, *they shall be treated in all respects as if they had been raised in the pleadings.*" (emphasis added).

Rule 55.33(b) applies to evidence presented on a motion to modify. *See Holt v. Holt,* 633 S.W.2d 171, 173 (Mo.App.E.D. 1982). Moreover, this rule applies where the evidence specifically concerns child support. *See In re Marriage of Burroughs,* 691 S.W.2d 470, 475 (Mo.App.E.D.1985).

We note that proof of different facts is necessary to establish entitlement to a reduction in child support, as compared to an abatement of child support or a modification of custody. *See* §§ 452.370, 452.340, and 452.410, RSMo Cum Supp.1991. Therefore, wife cannot claim surprise by the trial court's resolution of these issues.

■ Here, wife's counsel never objected that any of husband's evidence went beyond the scope of the pleadings. "Failure to timely and specifically object to evidence beyond the scope of the pleadings constitutes consent for determination of issues thereby raised." *Midwest Materials Co. v. Village Dev. Co.,* 806 S.W.2d 477, 488 (Mo. App.S.D.1991) (citing *Arnett v. Venters,* 673 S.W.2d 67, 72 (Mo.App.W.D.1984)).

A discussion of Rule 55.33(c), concerning relation back of amendments, is not necessary here. This concept is applicable primarily when a statute of limitations is implicated. *See* 6A *WRIGHT, ET AL, FED-ERAL PRACTICE AND PROCEDURE,* § 1496, at 64 (1990); 3 *MOORE, MOORE'S FEDERAL PRACTICE,* ¶ 15.15[5], at 15–176 (1992) (Rule 55.33(c) is patterned after Federal Rule of Civil Procedure 15(c)). There is no statute of limitations problem here.

Rule 55.33(b) mandates that when issues are tried by consent, they are treated "in all respects as if they had been raised by the pleadings." These issues thus "relate back" without the aid of Rule 55.33(c). *See* 6A *WRIGHT, supra,* § 1496, at 66.

■ The pleadings were amended when wife's counsel failed to object to evidence going beyond their scope. Here, in addition, husband's counsel took the precaution of formally moving for an amendment to conform to the evidence, which was granted without objection. A trial court should be liberal in permitting amendments of pleadings to conform to evidence. *St. Louis County v. Taggert,* 809 S.W.2d 476, 478 (Mo.App.E.D.1991). Moreover, a trial court has broad discretion concerning this issue, "and the trial court's decision will not be disturbed on appeal unless there is an obvious and palpable abuse of discretion." *Osborn v. Boatmen's Nat'l Bank of St. Louis,* 811 S.W.2d 431, 437 (Mo.App. E.D.1991). We find none. Point denied.

### III. Modification of Child Support

For her third point, wife contends that the trial court erred "in its calculation of husband's purported child support overpayments to wife in that such order misapplied the law and was unsupported by competent and substantial evidence in that: (A) the trial court retroactively modified support for the years 1989, 1990 and 1991 on a year-by-year basis, for which there is no statutory authority; (B) the trial court, contrary to husband's own evidence, gave husband too much credit for payment of tuition expenses of the children; and (C) the trial court eradicated the previous support obligation of up to $10,000 per year for private school tuition without any finding

**6.** Wife's appeal attorney was not her trial attorney.

whatsoever that such was no longer necessary or appropriate for the children."

The decree ordered husband to pay child support of $87.50 per week for each of the two children. In addition, the decree ordered husband to pay up to $10,000 per school year for private school tuition, books, and private tutoring.

The evidence at trial disclosed that husband made child support payments until some time in August of 1990. Both husband and wife testified that husband did not make any payments for tuition expenses during the 1990–91 school year. Husband's evidence concerning the amounts he paid for school expenses in previous years conflicted.

### A. Retroactive Modification

When the trial court modified husband's child support obligation, it considered both the amount of child support and the tuition expenses husband paid each month. The court found that husband paid $758.00 a month in child support. Further, although there was conflicting evidence, the trial court found that husband paid $776.00 a month in tuition expenses. The court then added these two figures, finding that husband had a monthly support obligation of $1,525.00.[7]

Although husband's evidence indicated he had less than $500.00 income in 1989, the trial court imputed $24,000.00 income to him. And although in 1991 husband had earned only $24,000.00 at the time of the hearing, the trial court imputed $40,000.00 income to him. With those adjustments, the trial court used each party's income for the years 1989, 1990, and 1991 and retroactively modified husband's obligation, calculating on a year-by-year basis.[8]

The provisions of a decree respecting support "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1, RSMo Cum Supp.1991. As required by this section, before the trial court modified husband's child support obligation, it found that husband had met this standard. This finding is supported by the record.

Wife argues that the trial court erred because it made separate modifications for 1989, 1990, and 1991. She cites *Caray v. Caray*, 569 S.W.2d 18 (Mo.App.E.D.1978), and *Langwell v. Langwell*, 559 S.W.2d 65 (Mo.App.W.D.1977), in support of her position. These cases are not germane. They are relevant to a determination of whether changed circumstances in fact exist, such that a trial court may modify a support provision. They are not, however, relevant to how the trial court should modify a decree once it determines that it has the authority to do so.

Here, even without its finding of changed circumstances, based on the substantial reduction in his income, the trial court clearly had authority to modify husband's support obligation. Husband's obligation, as ordered by the decree of dissolution, was more than 20% greater than the amount the guidelines would have required husband to pay. *See* § 452.370.1, RSMo Cum Supp.1991.

■ We have stated that a "trial court, in determining the rights and liabilities of parties to a divorce decree, follows the rules and principles of equity." *Sutton v. Schwartz*, 808 S.W.2d 15, 20 (Mo.App.E.D. 1991). Here, because it possessed evidence of the parties' varying incomes during the years at issue, the court calculated modifications of child support for each year. No statute, rule, or case has been brought to our attention that prohibits a trial court from so doing, nor are we aware of any. The trial court neither erroneously declared nor applied the law. Its findings were supported by and are not against the weight of the evidence. *See Murphy*, 536 S.W.2d at 32.

---

7. $758.00 and $776.00 total $1,534.00; the record does not explain this discrepancy.

8. Using Form 14 and the child support guidelines, the court modified child support for those years as follows: 1989, decreased the monthly obligation from $1,525.00 to $494.00; 1990, decreased to $619.00; 1991, decreased to $614.00. The court then offset the overpayments husband made with the arrearages he owed, finding that wife owed husband $6,463.00.

### B. Credit for Payment of Tuition Expenses

Wife next alleges husband was given too much credit for payment of the children's tuition expenses. The dissolution decree ordered husband to pay up to $10,000.00 per year in tuition expenses. Therefore, husband was entitled to credit for payment of these expenses. *See Indermuehle v. Babbitt*, 771 S.W.2d 873, 875 (Mo.App.E.D.1989); *Muhlhauser v. Muhlhauser*, 754 S.W.2d 2, 5 (Mo.App.E.D.1988).

We note that although husband's evidence conflicted, husband testified that he paid about $9,200.00 school tuition in 1989. "Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony." *In re Marriage of Plank*, 670 S.W.2d 185, 189 (Mo.App.S.D.1984) (citing *Ware v. Ware*, 647 S.W.2d 582, 583–84 (Mo.App.E.D.1983)).

### C. Eradication of Tuition Obligation

Finally, wife alleges the trial court erred when it eliminated husband's tuition obligation without finding that private schooling was no longer necessary or appropriate. However, at the hearing, on direct examination by her attorney, wife indicated the children were happy in the public school they were attending and that she would like for them to remain in that school system.

Further, at the time of dissolution, husband was earning $125,000 to $150,000.00 annually. The reduction of his income to $40,000.00 or less annually was another factor the trial court could properly consider in eliminating the $10,000.00 per year tuition obligation. Point denied.

### IV. Abatement of Child Support

For her fourth point, wife alleges the trial court erred in "ordering an abatement of child support in that such order misapplied the law and was against the weight of the evidence in that: (A) husband was *not* current in his child support payments as is required to avail oneself of the relief of abatement; and (B) the weight of the evidence showed that wife had not interfered with husband's visitation and temporary custody rights."

In its order, the trial court found that wife had alienated the children's affections from their father and "substantially, willfully, denied [him his] temporary custody and visitation." The court arrived at this conclusion from the children's "demeanor, their tone of voice, and their statements." In addition, the trial court found that husband was current in his support obligation.

Section 452.340.6, RSMo Cum Supp.1991, provides:

A court may abate, in whole or in part, any future obligation of support or may transfer the custody of one or more children if it finds:

(1) That a custodial parent has, without good cause, failed to provide visitation or temporary custody to the noncustodial parent pursuant to the terms of a decree of dissolution, legal separation or modifications thereof; and

(2) That the noncustodial parent is current in payment of all support obligations pursuant to the terms of a decree of dissolution, legal separation or modifications thereof. The court may also award reasonable attorney fees to the prevailing party.

Based on our resolution of wife's second and third points, husband was current in his support obligation. Therefore, if wife, without good cause, denied husband's visitation, then the trial court could find husband is entitled to an abatement in child support. It is sufficient to say that the evidence on this issue conflicted.

On appeal of a court-tried case, the appellate court does not function as a judicial second guesser. And where, as here, there is a conflict of testimony between witnesses, the reviewing court should defer to the findings of the trial court unless it is satisfied that they should be otherwise.... [T]he trial court is "in a better position not only to judge the *credibility* of the witnesses and the persons directly but also their *sincerity* and *character* and other trial

intangibles which may not be completely revealed by the record."

*L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 306 (Mo. App.E.D.1976) (citations omitted) (emphasis original).

We, therefore, defer to the trial court's findings on this issue. We find no reversible error. Point denied.

## V. Husband's Payment of Wife's Bills

For her fifth point, wife alleges "the trial court erred in ordering that wife was indebted to husband for $6,200 for his alleged payment of her bills because such order was a misapplication of the law, against the weight of the evidence and unsupported by competent and substantial evidence in that: (A) husband made no request for such relief or the determination of any such arrearage; (B) husband's documentary evidence on the basis of which the finding of such arrearage was made was introduced over wife's objection and should have been excluded as inadmissible, self-serving evidence; and (C) husband's own testimony refutes his entitlement to credit for the items requested in any event."

Husband testified he paid bills for which wife was responsible pursuant to the dissolution decree. He testified these bills amounted to $2,696.73. He testified the reason he paid these bills was that "[wife] put me down as responsible party and I had bill collectors hassling me, sending me bills and everything else. And the only way to get these people off my neck was to pay these bills." Husband then requested credit both for the bills he paid and the checks wife cashed. Wife's counsel did not object to this testimony.

At the hearing, husband's counsel cross-examined wife about cashing two checks. The first, dated October 5, 1988, was made payable to Construction Management Services in the amount of $1,846.94. Wife admitted cashing the check but testified she believed half the check was hers. At this point wife's counsel objected, stating, "We are not asking for this money and this is not one of the issues." The court overruled the objection. After several further questions concerning the check, husband's

counsel introduced the check into evidence. Wife's counsel did not object.

The second check, dated February 26, 1988, was made payable to husband in the amount of $950.57. This check, too, was introduced into evidence without objection from wife's counsel.

Husband's counsel offered an exhibit summarizing the bills husband paid. Wife's counsel objected that it was "self-serving." The court admitted the exhibit over wife's objection.

As previously mentioned, at the close of all the evidence, husband's counsel requested the pleadings be amended to conform to the evidence. Wife's counsel made no objection. The trial court granted the request.

■ Our discussion in section II concerning Rule 55.33(b), amendment of pleadings to conform to the evidence, is equally applicable here. Although wife's counsel eventually objected to her testimony concerning a check she cashed and objected to the offer of husband's exhibit summarizing the bills husband paid, these objections were made after the parties had testified. As a consequence, they were too late. The information was already in evidence. The trial court did not abuse its discretion in permitting the amendment of the pleadings.

Finally, wife asserts there was a lack of evidence that husband was entitled to credit for the $1,846.94 check she cashed. She points out the check was made payable to Construction Management Services and there was no evidence that husband had any ownership interest in that firm when the check was cashed. However, husband's testimony reflects he owned the company at the time wife cashed the check, as well as for several months thereafter.

■ We now turn to whether the trial court should have given husband these credits. As noted earlier, in dissolution matters, a trial court follows principles of equity in determining the rights of parties. Although the dissolution decree did not require husband to pay wife's bills, husband testified wife listed him as the responsible

party. We cannot say he paid them voluntarily. In addition, wife cashed checks that were husband's. Point denied.

## VI.   Attorney's Fees

At oral argument, wife withdrew her sixth point. For her seventh point, wife contends that the "trial court erred in ordering the payment of $6,500 in attorney's fees from wife to husband because such order was against the weight of the evidence, which showed that the legal positions pursued by both parties after the dissolution had some merit."

Husband's counsel testified that from 1989 to the time of the hearing, his attorney's fees totaled $6,530.00. Wife's counsel did not object, nor did he question husband's attorney. The trial court ordered wife to pay to husband's attorney his fees of $6,500.

■ In actions concerning dissolution of marriage, a trial court has broad discretion in awarding attorney's fees. *Burden v. Burden*, 811 S.W.2d 818, 821 (Mo.App. S.D.1991). Wife bears the burden of showing the trial court abused its discretion in awarding attorney's fees. *See Pauley v. Pauley*, 771 S.W.2d 105, 111 (Mo.App.E.D. 1989).

■ Here, wife neither objected to husband's counsel's testimony nor questioned him when given the opportunity to do so. *See id.* While the court must consider the parties' financial resources, inability to pay attorney's fees is not a requirement for an award, *In re Marriage of Gourley*, 811 S.W.2d 13, 22 (Mo.App.S.D.1991), but rather, merely one factor to consider. *Lefever v. Lefever*, 840 S.W.2d 873, 876 (Mo.App. E.D., 1992). The court may consider the conduct of both parties. *See Gourley*, 811 S.W.2d at 22–23; *Pauley*, 771 S.W.2d at 111.

We will not disturb an award of attorney's fees absent a showing of an abuse of discretion. *Burden*, 811 S.W.2d at 821. We find none. Point denied.

## VII.   Visitation

For her eighth and final point, wife contends that the "trial court erred in modifying child custody in giving husband increased temporary custody and visitation rights and in failing to require that such visitation be supervised and be contingent upon husband's receiving counseling with the children because such is against the weight of the evidence and is unsupported by competent and substantial evidence which showed that the children are extremely alienated and estranged from husband because of husband's pattern of repeated and extreme abuse of the children; that the children fear being in husband's presence; and that counseling is the only reasonable means of re-establishing any kind of relationship between husband and the children."

■ The principles that govern disposition of a motion to change custody are equally applicable to a modification of visitation. *Amedei v. Amedei*, 801 S.W.2d 491, 493 (Mo.App.W.D.1990). Before a court can modify custody, it must find two things: (1) post-dissolution change in circumstances of child or custodial parent, and (2) "modification is necessary to serve the best interests of the child." § 452.410; *id.*

We first note that wife complains that husband is receiving increased temporary custody and visitations rights. As we compare the trial court's order with the original stipulation of the parties, however, the trial court appears to have traded periods of time rather than outright increased custody and visitation. Thus, although husband received increased temporary custody during the summer, the trial court eliminated custody during at least three other holiday periods. And, in addition, the trial court eliminated four hours of visitation each Wednesday.

Here, the trial court made the following finding: "[T]he Court finds that ... [wife] ... unreasonably denied and interfered with [husband's] visitation and temporary custody with his children." The trial court then modified husband's visitation.

Wife first argues that this modification was not supported by substantial evidence. She cites the children's testimony that their father had physically and emotionally abused them. Wife is correct in her assertion that child abuse is a sufficient change in circumstances to justify a change in custody. *See K.J.B. v. C.M.B.*, 779 S.W.2d 36, 37–39 (Mo.App.E.D.1989). However, the evidence on whether abuse actually occurred conflicted. In his testimony, husband specifically denied these allegations. Because the trial court is in a better position to judge the weight of the evidence and credibility of the witnesses, we defer to its judgment. *See Amedei*, 801 S.W.2d at 495; *Graham v. Graham*, 428 S.W.2d 941, 944 (Mo.App.E.D.1968).

Second, wife asserts that the trial court's order did not consider wife's move to Kansas City, Kansas. Specifically, she argues the children should not be "forced" to travel approximately 500 miles round trip from St. Louis to Kansas City every other weekend.

We acknowledge that travelling a long distance every other weekend for visitation does not generally serve a child's best interest. *See Hord v. Morgan*, 769 S.W.2d 443, 449 (Mo.App.W.D.1989) (affirmed modification of visitation from every other weekend to one weekend a month because "the 400 mile trip every other weekend was detrimental to the children, causing them to be tired and occasionally miss school."); cf. *Harris v. Harris*, 685 S.W.2d 242, 244 (Mo.App.W.D.1985) (affirmed modification of grandparent visitation from "every other weekend and one night a week to one full week per month" because of time spent transporting the child). However, in this case, the trial court's order was not an abuse of discretion.

The trial court found that wife had alienated the children's affections from their father. Husband testified that with the exception of a visit to his son's school, the last time he had seen his children before the hearing was the first of August, 1990.

The children's counselor/psychologist testified the children should re-establish their relationship with their father. More-

over, husband testified he wanted to re-establish his relationship with the children.

In order to re-establish a relationship with his children husband must be given the opportunity to regularly and frequently visit with them. Although the children necessarily will travel every other weekend, husband must be given this opportunity. We find that it is in the children's best interest to reestablish their relationship with their father.

Our finding is supported by our general assembly's declaration that the public policy of this state is to "assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage." § 452.375.3, RSMo Cum Supp.1991.

Finally, wife asserts that husband should be required to undergo counseling in order to re-establish his relationship with his children. However, at trial, husband indicated he recognized this fact. He testified, "I need to reestablish [my] relationship [with my children] as well as spend time in counseling with them." We again defer to the trial court, which can best judge the sincerity and credibility of the witnesses. *Amedei*, 801 S.W.2d at 495. We find no reversible error. Point denied.

We reverse and remand the judgment of the trial court as set forth in section I, and direct it to proceed in accordance with the directions therein. In all other respects, the judgment of the trial court is affirmed. Court costs assessed equally to the parties.

CRANDALL, P.J., and PUDLOWSKI, J., concur.