

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JOHN BALLENGER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD77261 |
| | ) | |
| JANICE BALLENGER, | ) | Opinion filed:   October 14, 2014 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY, MISSOURI**
**THE HONORABLE R. MICHAEL WAGNER, JUDGE**

Before Division Two:  Victor C. Howard, Presiding Judge,
James E. Welsh, Judge and Anthony Rex Gabbert, Judge

In this habeas corpus proceeding, the trial court ordered the return of custody of the minor child to John Ballenger (Father) pursuant to a paternity judgment entered before the parties' marriage.  Janice Ballenger (Mother) appeals arguing that the parties' marriage effectively abrogated and nullified the prior paternity judgment.[1]  The judgment of the trial court is reversed.

---

[1] Although an appeal does not normally lie from the trial court's issuance of a writ of habeas corpus, section 512.025, RSMo 2000, permits an appeal "in a habeas corpus proceeding involving the custody of a minor child where there is in effect, at the time of the hearing on the writ, no prior order determining custody."  Because we determine that Mother's assertion is correct that the parties' subsequent marriage effectively nullified the prior paternity judgment, which included a custody order, Mother's appeal is proper under section 512.025.  *See Anderson v. Jackson*, 181 S.W.3d 172, 175 (Mo. App. S.D. 2005)(where mother appealed a judgment denying her two-count petition to modify a prior custody order (count I) and for writ of habeas corpus (count II), Southern District

On March 7, 2002, Mother gave birth to a son out of wedlock. On November 7, 2003, a paternity judgment was entered declaring Father to be the biological father of the child. The judgment also awarded Mother and Father joint legal and physical custody of the child. Father's residence was designated as the child's residence for educational and mailing purposes with Mother receiving reasonable and specific physical custody rights in accordance with the court-approved parenting plan. Specifically, the parenting plan provided for an approximately fifty percent shared custody arrangement with physical custody of the child alternating each week between Mother and Father.

Mother and Father married on May 14, 2007. On December 13, 2013, Father filed a petition for writ of habeas corpus alleging that he was lawfully entitled to custody of the child pursuant to the 2003 paternity judgment, that he had requested Mother to return the child to him, and that Mother had refused. Mother filed an answer to the petition alleging that the parties' marriage on May 14, 2007, effectively abrogated and nullified the 2003 paternity judgment. Following a hearing on the petition, the trial court entered judgment on January 6, 2014, ordering the return of custody of the minor child to Father pursuant to the paternity judgment. Thereafter, Father filed a petition for dissolution of marriage on January 10, 2014. The petition remains pending in the trial court. This appeal by Mother followed.

In her sole point on appeal, Mother contends that the trial court erroneously applied the law in granting Father's petition for writ of habeas corpus and directing her to return custody of the minor child to Father pursuant to the prior paternity judgment, which included a custody determination. She claims that the parties' marriage in 2007 effectively abrogated and nullified the prior paternity judgment.

explained that section 512.025 would allow mother to appeal the denial of the petition for writ of habeas corpus if her assertion was correct that the prior custody judgment was not valid).

2

The custody issue presented in this case has never been decided in Missouri. Father cites *Cook v. Cook*, 691 S.W.2d 243 (Mo. banc 1985), and *Pauley v. Pauley*, 771 S.W.2d 105 (Mo. App. E.D. 1989), for his argument that the trial court did not err in ordering the return of custody of the minor child to him pursuant to the paternity judgment. Neither case, however, addressed the effect of a parties' subsequent marriage on a prior custody order in a paternity action.

In *Pauley*, the parties were married, had three children, and then divorced. 771 S.W.2d at 106. They remarried, had two more children, and divorced again. *Id.* In the second dissolution case, the trial court's judgment included provisions for the custody and support of all five children. *Id.* at 106, 110. The father argued on appeal that the trial court lacked jurisdiction to enter custody and support orders for the three children born of the first marriage and that a separate motion to modify the first dissolution decree was required for any custody or support determinations concerning those children. *Id.* at 110.

The Eastern District did not address the effect of the parties' remarriage on the first dissolution decree but instead held that the father tried by consent the issues of custody and support of all five children where he admitted the allegations in the petition for dissolution of marriage that there were five minor children born of the marriage. *Id.* The Eastern District continued, "The new petition for dissolution of the parties' subsequent marriage put the issues of child custody and support before the court, just as a motion to modify would have invoked the court's continuing jurisdiction to make such changes." *Id.* The court's comment regarding a motion to modify was dicta in that it was unnecessary to the decision. "Obiter dicta, by definition, is a gratuitous opinion. Statements are obiter dicta if they are not essential to the court's decision of the issue before it. While dicta can be persuasive when supported by logic, it

is not precedent that is binding upon us." *Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo. App. W.D. 2003)(internal quotes and citations omitted). *Pauley* is not useful in this case.

In *Cook*, the marriage of the parties was dissolved, and the mother was awarded custody of the minor child subject to the father's visitation. 691 S.W.2d at 244. Thereafter, the dissolution decree was modified by granting custody of the child to the father. *Id.* In the habeas corpus proceeding, the mother claimed custody of the child under the original dissolution decree arguing that the order modifying the decree was not valid because she was not given the required time to plead after service of summons upon her. *Id.* The Missouri Supreme Court agreed, holding that the modification was invalid and the mother was entitled to custody under the dissolution decree. It explained, "Until a valid modification, petitioner's grant of custody under the dissolution decree controls, and she is entitled to custody of [the child]." *Id.* at 245. Here, Father argues, "Like *Cook*, without a subsequent judgment the original custody decree controls." But *Cook* simply held that a subsequent modification, obtained improperly, will not be given force or effect. Just as with *Pauley*, *Cook* did not address the issue of the effect of a parties' remarriage on the first dissolution decree and is not helpful in this case.

The Southern District case, *Root v. Root*, 774 S.W.2d 521 (Mo. App. S.D. 1989), is instructive in this case. In *Root*, the parties' marriage was dissolved, and the decree awarded custody of the minor children to the mother and ordered the father to pay child support. *Id.* at 521. The father failed to pay over $3000 in child support, and garnishments were issued. *Id.* The parties then remarried. *Id.* The mother subsequently filed a petition for dissolution of marriage and requested the circuit court clerk to issue an execution to collect the child support arrearage. *Id.* The trial court entered an order quashing the execution, forever discharging and releasing the father from the money judgment. *Id.* On appeal, the mother argued that the

4

remarriage did not extinguish her claim for unpaid child support that had accrued under the original dissolution degree prior to the remarriage. *Id.*

The Southern District agreed, holding that the parties' remarriage did not nullify or extinguish the mother's claim as a judgment creditor of the father for child support owed for the time between the original divorce and the remarriage. *Id.* at 527. Noting that the mother did not claim any child support for any period after the remarriage, the court explained:

> It would be absurd to hold that once parents remarry each other and the family is again intact and residing in the same household, the former noncustodial parent must pay future installments of child support to the other parent per the past divorce decree. That is to say, the remarriage should terminate the former noncustodial parent's duty to pay any child support that would have become due after the remarriage.

*Root v. Root*, 774 S.W.2d 521, 523 (Mo. App. S.D. 1989). So, remarriage extinguishes the future vitality of the divorce judgment.

This analysis is in line with the vast weight of authority from other jurisdictions that determined the effect of remarriage on a prior custody order within a divorce decree. Those cases hold that when divorced persons remarry each other, their remarriage terminates the divorce court's jurisdiction over the parties and their minor children and nullifies the provisions of a divorce decree relating to child custody. *See Ex parte Phillips*, 95 So.2d 77 (Ala. 1957); *Oliphant v. Oliphant*, 7 S.W.2d 783 (Ark. 1928); *Davis v. Davis*, 437 P.2d 502 (Cal. 1968); *In re Marriage of Doria*, 855 P.2d 28 (Colo. App. 1993); *Warren v. Warren*, 97 S.E.2d 349 (Ga. 1957); *Lockard v. Lockard*, 102 N.E.2d 747 (Ohio Com.Pl. 1951); *Slape v. Slape*, 553 S.W.2d 171 (Tex. App. 1977). The rationale for such holding is that if parties to a divorce remarry each other, they no longer have separate rights of custody that require supervision by the court. Instead, there is a resumption of the same joint right to custody that antedated the divorce. *Id.* "With the parties reunited in marriage, and with their several rights of custody remerged into one

common right of custody, the basis for the court's further jurisdiction ceases." *Ex parte Phillips*, 95 So.2d at 79 (internal quotes and citation omitted). These decisions are "consistent with the objective of reestablishment of the family for the benefit of both the children and the parties." *Davis*, 437 P.2d at 504.

While *Root* involved child support rather than custody and it and the cases from the other jurisdictions concern a previous dissolution judgment rather than a paternity judgment, the cases are analogous to the instant case, and their reasoning applies here. No reasonable distinction can be made between the effect a subsequent marriage has on a paternity judgment and the effect a subsequent remarriage has on a dissolution judgment. In Missouri, married parents and parents of children born out-of-wedlock have equal rights and duties with regard to their children. § 210.818, RSMo 2000[2]; § 210.817(4), RSMo 2000.[3] Paternity actions, as well as dissolution actions, involve the determination of the separate rights and liabilities of parents for their children. *Schaff v. Schaff*, 446 N.W.2d 28, 32 (N.D. 1989). In a paternity action, the court may enter a judgment or order determining the custody of the child. § 210.841.3(2), RSMo 2000. Likewise, in a dissolution action, the trial court must make an award of custody of all minor children. § 452.375.2, RSMo Cum. Supp. 2013; *Rich v. Rich*, 871 S.W.2d 618, 624 (Mo. App. E.D. 1994).

The subsequent marriage or remarriage of those parents creates joint rights and liabilities for custody and support of their children extinguishing their former separate rights and liabilities. *See Wilson v. Bodine*, 207 Cal.App.4th 768, 777 (2012), and *Schaff v. Schaff*, 446 N.W.2d 28, 32 (N.D. 1989)(both finding no distinction between effect marriage has on a paternity decree versus

---

[2] "The parent and child relationship extends equally to every child and every parent, regardless of the marital status of the parents."

[3] "Parent and child relationship" is defined as "the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship."

a divorce decree). Upon the legal separation or termination of the marriage or the second marriage between the parents, custody and support are determined anew. *See Id.* Accordingly, when the parents in this case married in 2007, the custody provision of the 2003 paternity judgment was nullified and replaced by the law governing the rights and obligations of married parents to their children. The trial court erred in entering judgment ordering the return of custody of the minor child to Father pursuant to the 2003 paternity judgment.

The judgment of the trial court is reversed.

_____
VICTOR C. HOWARD, JUDGE

All concur.

7