Betty Lea NIXON, Petitioner-Respondent,

v.

Jeremiah NIXON, Respondent-Appellant.

Nos. 36487 and 36488.

Missouri Court of Appeals, St. Louis District, Division Four.

July 8, 1975.

Thurman, Nixon, Smith, Howard, Weber & Bowles, James E. Bowles, Hillsboro, for respondent-appellant.

London & Greenberg, Burton Greenberg, St. Louis, for petitioner-respondent.

## PER CURIAM:

Action by the wife for dissolution of the marriage of Betty Lea and Jeremiah Nixon. The trial court dissolved the marriage and awarded petitioner custody of 15-year-old daughter Penelope and $250 per month for her support; $500 per month for maintenance; the family home and contents; a half interest in a house in Versailles in which petitioner's mother lives; a $15,000 insurance policy on respondent's life; a secured promissory note for $37,240, and an automobile. Respondent was awarded the interest of the parties in two business partnerships and small corporations; a $20,000 note owed respondent by one of the corporations; a life insurance policy on respondent's life; two motor vehicles, and other personal property. Both parties appealed. Neither contests the order dissolving the marriage. Both except to the money awards and orders relating to division of marital property. Petitioner asserts that awards of $500 per month for maintenance and $250 for Penelope's support are inadequate; that she should have been awarded $1,000 per month for maintenance and $550 per month for the support of Penelope; that $5,000 for an attorney's fee is overly conservative and should be increased to $6,500. Respondent disputes the propriety of any award of permanent maintenance and asserts error in awarding petitioner (1) the $37,240 note; (2) the $15,000 life insurance policy; (3) the $5,000 attorney's fee; (4) a $500 additional attorney fee "on account," and error in retaining jurisdiction to supplement that award after appeal; and (5) $200 for suit money. At issue is the question whether certain items properly constitute marital property. Respondent contends that to declare (1) and (2) above marital property would violate due process because such an order would be based upon an ex *post facto* law (Laws 1973, p. 412, H.B. No. 315, the so-called "no fault divorce law," having taken effect after the filing of the original divorce action and before trial). Also at issue is petitioner's claim that the court erred in not apportioning to her one-half of the marital assets awarded respondent; in not granting to her custody of the 19-year-old son of the parties, and in not awarding her $550 per month for his support. Both appeals, consolidated for briefing and argument, will be disposed of in this opinion. The ex-wife will be referred to as "petitioner" and the ex-husband as "respondent."

■ As to the constitutional question: Respondent contends that when this action was filed, prior to the enactment of § 452.-330, RSMo 1969, V.A.M.S., which defines marital property and authorizes the court to divide marital property in such proportions as the court deems just, items (1) and (2) above were unquestionably his own separate property, in which he had a fixed, existing right, and that § 452.330, which took effect after that right vested and after this litigation was commenced, cannot constitutionally be applied retroactively to di-

vest respondent of his property. The original petition was filed March 29, 1973. The new law went into effect January 1, 1974. On January 15, 1974 petitioner filed an amended petition conforming to the new language and concepts. On March 24, 1974 respondent filed his fourth amended answer, conforming to the new law, joining issue on what is and what is not marital property. Neither in his fourth amended answer, nor by separate motion in the trial court, nor by other proceeding, did respondent raise the constitutional question now sought to be raised. Having joined issue on the question what is marital property, and having failed to raise the constitutional question at the first opportunity (and not until his brief on appeal was filed January 20, 1975), respondent has waived the constitutional question.

■ Careful perusal of the 287-page original transcript, the 29-page supplemental transcript, the several exhibits, 112 pages of briefs and the appendices thereto, and consideration of the arguments of counsel, convinces this Court that the orders of the circuit court relating to the division of the marital property and the award of monthly stipends for maintenance, child support and attorney's fees and suit money, are just, in the light of the four relevant factors enjoined upon the court for consideration by § 452.330, RSMo 1969, V.A.M.S. Without reciting the supportive evidence in detail, which has no precedential value, we reach the same result arrived at by the circuit court and adopt and confirm those orders as reasonable and well considered.

While the trial court did not make a specific finding as to the value of the marital property (estimated by respondent at $362,290 in a statement filed with a bank, and at $207,968 in papers filed by him in this case) we find that the total value of the marital property, as of August 23, 1974, the date of the judgment and decree, was approximately $260,000.

We find that the reasonable value of the property properly awarded petitioner as her marital property under Schedule A of the judgment and decree is as follows:

| Item | Market value |
|------|-------------|
| 1. Family residence | $45,000.00 |
| 2. Contents of residence | 6,000.00 |
| 3. Interest in Versailles property | 7,000.00 |
| 4. Insurance policy | 3,775.00 |
| 5. Promissory note | 30,240.00 |
| 6. Automobile | 2,000.00 |
| Total...... | $94,015.00 |

We find that the award of these specific items to petitioner represents a just division of the marital property under the circumstances of this case.

■ With respect to maintenance: Under the evidence petitioner lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs, and under the existing circumstances in the job market for teachers with merely a bachelor's degree and a life teaching certificate, we find petitioner unable to support herself through appropriate employment, at the time of the judgment and decree. The limited income from the marital property apportioned to petitioner, together with a monthly allowance of $500 for maintenance, constitutes a just and proper provision for petitioner as of the date of the judgment and decree. The maintenance award is subject to modification or termination upon motion based upon changed conditions if and when, upon completion of advanced educational accreditation which the evidence shows petitioner has undertaken to obtain, she qualifies to compete in the job market for teachers with special qualifications, or upon the expiration of a reasonable length of time within which to so qualify.

■ We find that the allowance of $250 per month for the support of Penelope is reasonable, and that the evidence does not support petitioner's claim for $550 per month on this account.

We find that the awarding of the remainder of the marital property, nine items listed in Schedule A, to respondent, was proper, and represents a just division, in view of all the circumstances.

One of the compelling circumstances in this case is the proven money-making ability of respondent, a prominent and successful lawyer with a lucrative practice, who has demonstrated his business acumen in the conduct of several profitable commercial ventures.

In these findings we have included as marital property the net proceeds of an out-of-court settlement of a lawsuit filed by respondent against Merrill-Richardson Drug Company for damages to his eyes and loss of professional income resulting from taking medicine manufactured by that company. The case, in which respondent was the sole plaintiff (his wife not having joined as a party plaintiff or sued separately for loss of consortium), was settled for $60,000. Respondent netted $55,000 after payment of his attorney's fee. That sum was placed in a separate account in respondent's name. $25,000 of that money was invested in a commercial partnership, which thrived and increased in value many fold, as did a small business corporation owned by the partnership. Respondent contends that the $55,000, plus increases in value and assets deriving from investment of part of that money, are the separate, individual property of respondent, not to be considered in any apportionment of marital property; that a spouse's recovery for personal injuries is a personal and not a marital or community right, as evidenced by the rule that a spouse's action for loss of consortium does not survive the death of the injured spouse, *Ray v. Bartolotta,* 408 S.W.2d 838 (Mo. 1966), and by the fact that § 537.020, saving causes of action for personal injuries from abatement, provides that they survive to the personal representative and not to the surviving spouse. The difficulty with this contention is that section 2 of § 452.330, RSMo 1969 defines "marital property," for purposes of the chapter on Dissolution of Marriage, as "all property acquired by either spouse subsequent to the marriage," with five specified exceptions, none of which is applicable here. *All property* includes the property acquired by respondent as a result of the settlement of his personal injury action, and all increases in value thereof.

Considering the necessities of petitioner, the ability of respondent to pay, the time necessarily spent by counsel in preparing and presenting this case to the trial and appellate courts, the legal services rendered and the current value of legal services, we find the allowances for attorney's fees, and for suit money, to be reasonable. There was no error in retaining jurisdiction to consider application for further allowances of attorney's fees for services rendered on the appeal.

With respect to the claim of error in not awarding to petitioner the custody of Jeremiah, born to the parties February 13, 1956: At the time the judgment and decree was entered (on August 23, 1974) Jeremiah was 18½ years of age. No provision was made in the decree for his custody, perhaps for the reason that on August 13, 1974, Senate Bill No. 438, Vernon's Missouri Legislative Service, 1974, No. 2, p. 190, became effective, fixing the age of majority at eighteen years, entitling all persons having attained that age to the obligations, etc. of adulthood and relieving them of the disabilities of infancy. Since that time Senate Bill No. 438 has been declared unconstitutional, *State ex rel. McNary v. Stussie,* 518 S.W.2d 630 (Mo. banc 1974), and therefore the question of Jeremiah's custody and any appropriate support orders with reference thereto until he reaches age 21 are matters to be determined in a hearing in circuit court, for which this cause must be remanded.

Accordingly, the judgment and decree of August 23, 1974 is affirmed in all respects, but the cause is remanded for the purpose of conducting a hearing on the issue of the custody and support of Jeremiah Nixon, now 19 years of age.

All concur.