Joyce Ann **GONZALEZ**, Petitioner, Cross-Appellant,

v.

Marino Roman **GONZALEZ**, Respondent-Appellant.

Nos. 47958, 48021.

Missouri Court of Appeals, Eastern District, Division Three.

April 16, 1985.

Mason W. Klippel, Clayton, for petitioner, cross-appellant.

William R. Gartenberg, P.C., Clayton, for respondent-appellant.

DOWD, Presiding Judge.

Husband Mario Gonzalez appeals only those provisions of a dissolution decree regarding the division and classification of marital property, the award of maintenance and attorney's fees, and the payment of two deeds of trust. The wife Joyce A. Gonzalez cross appeals the division of marital property and the limiting of her maintenance to a specific period of time. The parties agreed that the marriage was irretrievably broken.

The parties were married 26 years and had three children. Two are emancipated and one is a 19 year old daughter who lives with the mother. At time of trial, the wife was 42 years old and had a tenth grade education. During most of the marriage, she worked outside of the home as a waitress and as a clerk. At request of the husband, she quit her job in 1969 as a clerk to open a small family carry-out restaurant. The restaurant was not a financial success and she received no salary from the business. At the time of trial, her only income was $91 per month as interest from a certificate of deposit. She is under the care of a physician for nerves and tension problems.

Husband, at the time of trial, was age 42 and employed by the Terminal Railroad Association and received a gross income in 1981 of $22,000—$23,000 and in 1982 his gross income was $25,000—$26,000. He received an additional $75 per month as a union treasurer from the Railroad Brotherhood. In 1979, the husband received $106,-000 as a settlement for personal injuries under the Federal Employers' Liability Act (F.E.L.A.). He placed this money in a bank in Illinois in his name only. The court found that he received $1,166 per month interest from this Illinois bank account.

Husband was awarded $107,461 marital property and the wife was awarded $86,964 marital property. As part of the division of marital property, husband was ordered to pay $17,000 to satisfy two deeds of trust which were marital debts. He was also ordered to pay $30,000 as maintenance in gross, payable $1,000 per month for 30 months and the attorney's fees for wife in amount of $1,750.

Husband contends: (1) the trial court erred in including as marital property the F.E.L.A. award of $106,000; (2) the court erred in the award of maintenance and attorney's fees; and (3) the court erred in requiring him to satisfy the two deeds of trust.

Wife contends: (1) the trial court erred in awarding the husband a disproportionate share of the marital property; and (2) the court erred in not awarding her permanent maintenance.

Initially, husband contends that the court erred by including as marital property the $106,000 award settlement on his F.E.L.A. claim for personal injuries. He argues that this award should have been classified as separate property and set aside for him in addition to his share of the marital property. Marital property is defined in § 452.330(2) RSMo 1978 (as amended 1981) as all property acquired by either spouse during the marriage except:

1. Property acquired by gift, bequest, devise or descent;

2. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

3. Property acquired by a spouse after a decree of legal separation;

4. Property excluded by valid agreement of the parties; and

5. The increase in value of property acquired prior to the marriage.

Husband concedes that his F.E.L.A. award for personal injuries is not a stated exception in the statute. Appellant also concedes that this court has held in *Nixon v. Nixon*, 525 S.W.2d 835, 839 (Mo.App. 1975) that a personal injury settlement was marital property. However, the husband argues that because this award is based on the federal F.E.L.A. statute, the state law shall be overridden under the Supremacy Clause of the federal constitution. His reliance on *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) is misplaced. *Hisquierdo* is cited for the principle that when a state family law property statute does "major damage" to a "clear and substantial" federal interest, the state law will be overridden by the Supremacy Clause. *Hisquierdo* held that benefits under the Railroad Retirement Act of 1974 could not be considered marital property. Husband argues that this holding should be applied to the rights created under the F.E.L.A. statute. However, the two federal statutes are completely different. The Railroad Retirement Act of 1974 (R.R.A.) demonstrates a clear intent by Congress to exempt benefits under the Act from being treated as marital property. The court in *Hisquierdo* relying on the R.R.A. statute, stated at 99 S.Ct. 810: "In direct language the spouse is cut off:

'The entitlement of a spouse of an individual to an annuity under Section 231 of (c) of this title *shall end* on the last day of the month preceding the month in which ... (B) the spouse and the individual are absolutely divorced ...' " 45 U.S.C. § 231d(c)(3).

The court in *Hisquierdo* also relied on the following subsection of R.R.A. statute at 99 S.Ct. 805:

"... no annuity or supplemental annuity shall be assignable or be subject to any tax *or to garnishment*, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated...." 45 U.S.C. § 231m(a).

The court in *Hisquierdo* also points out that a prior proposal to revise the Act to provide for benefits for divorced spouses was rejected by Congress. The court stated at 99 S.Ct. 810:

"The choice was deliberate. When the Act was revised in 1974, a proposal was made to award a divorced spouse a benefit like that available to a divorced spouse under the Social Security Act. The Labor-Management Negotiation Committees, however, rejected that proposal, and *Congress ratified its decision*. It based its conclusion on the perilous financial state of the Railroad Retirement Account and the need to devote funds to other purposes."

Thus, the Congressional intent not to allow divorced spouses to share in the benefits created by the Railroad Retirement Act is clearly demonstrated and the Supremacy Clause would prevail if attempts in the state court were made to obtain benefits for divorced spouses.

On the contrary, the F.E.L.A. statutes (45 U.S.C. Sections 51 et seq.) do not contain the restrictive type language as is found in the Railroad Retirement Act. Both Congress and the courts have long recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child belongs to the laws of the States and not to the laws of the United States." *In Re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 1500 (1890). Courts generally interpret statutes with the presumption that Congress did not intend to interfere with state domestic relations laws. *Operating Engineers v. Zamborsky*, 650 F.2d 196, 199 (9th Cir.1981).

Unlike the R.R.A. statutes, there is no clear federal intent stated in the F.E.L.A. statutes directing that property rights created by these statutes be exempt from the operation of the state family law statutes relating to the division of property. Accordingly, the court does not have the right

to create such an exemption. *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904).

Because Congress has not "positively required by direct enactment" in the F.E.L.A. statutes that state law relating to a division of property in a dissolution of marriage action be preempted, the Supremacy Clause has no application. *Hisquierdo*, 99 S.Ct. at 808. We, therefore, follow the holding in *Nixon, supra,* and hold the F.E.L.A. award is properly considered marital property. Point denied.

■■■ Next husband contends that it was error to require him to satisfy two deeds of trust on property awarded to the wife. These marital debts were part of the division of marital property. The existence and extent of marital debts and who will be responsible for payment are factors considered by the trial court in establishing a fair division of the marital assets. *In re the Marriage of Kluba*, 647 S.W.2d 920 (Mo.App.1983). While the trial court is not required to allocate marital debts between the parties it is a commendable practice because it serves to alleviate future dissention. *In re Marriage of Smith*, 652 S.W.2d 743, 744 (Mo.App.1983). Point denied.

■■■ Both husband and wife challenge the divisions of marital property. We find no error in its division. The division of marital property is not required to be equal but to be fair. *Fauser v. Fauser*, 677 S.W.2d 422, 423 (Mo.App.1984). The trial court is vested with broad discretion in this area. *Arp v. Arp*, 572 S.W.2d 232, 234 (Mo.App.1978). We find no abuse of discretion in the division of marital property. Points denied.

■■■ We also hold that the trial court did not abuse its discretion in awarding attorney's fees to wife by reason of husband's greater earning ability. Section 452.355 RSMo 1976; *In Re Marriage of Dusing*, 654 S.W.2d 938, 947–48 (Mo.App.1983).

Both husband and wife also attack the provision regarding maintenance. Husband claims the record does not show a need for maintenance. Wife claims she was entitled to an award of unlimited maintenance.

■■■ Our Supreme Court in *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800 (Mo. banc 1983) pointed out that § 452.335 RSMo 1978 granted to the trial courts wide latitude in decreeing spousal maintenance, both as to the amount and its duration, and such a decree shall not be disturbed unless there is a showing of an abuse of that discretion. *Royal v. Royal*, 617 S.W.2d 615, 619 (Mo.App.1981). The basis for an award of maintenance arises when (1) one spouse lacks sufficient property (including the apportioned marital property) to provide for her/his reasonable needs and (2) is unable to support herself/himself through appropriate employment. There is also a policy of encouraging self-sufficiency following a separation. *Brueggemann v. Brueggemann*, 551 S.W.2d 853 (Mo.App. 1977). Here, the wife was awarded $30,000 as maintenance in gross payable $1,000 per month for 30 months. She was given $86,-964.04 as her share of marital property. Of this amount, the wife concedes that $66,994.00 could be considered income producing. She is 42 years of age and has worked most of her marriage outside the home as a waitress or a clerk. At this time of trial she was operating a small family restaurant three days a week but drawing no salary. While she is under a doctor's care for her nerves and tension, the record indicates that she is capable of pursuing gainful employment. The wife has failed to show that the trial court abused its discretion in limiting her maintenance in gross to $30,000 payable $1,000 a month for 30 months.

We believe both the need for maintenance and the amount and its payments as alimony in gross are supported by substantial evidence and should be affirmed. Points denied.

The judgment is affirmed.

CRIST and CRANDALL, JJ., concur.