Alice F. HESLOP, Respondent,

v.

Ronald V. HESLOP, Appellant.

No. WD 53933.

Missouri Court of Appeals,
Western District.

Submitted Dec. 4, 1997.

Decided March 24, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 28, 1998.

Application for Transfer Denied
June 16, 1998.

James F. Ralls, Jr., Liberty, for appellant.

John J. Hager, Kansas City, for respondent.

Before ULRICH, C.J., P.J., SMART, J., and TURNAGE, Senior Judge.

PER CURIAM.

Ronald V. Heslop ("Ronald") appeals the trial court's judgment in this dissolution of marriage case. Ronald challenges the finding that the entire settlement he received from the Union Pacific Railroad for a claim under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq., was marital property. Ronald also argues that the trial court erred in awarding one-half of the FELA settlement to Alice because the evidence at trial showed that only $24,000.00 of the $52,000.00 award remained at the time the marriage was dissolved. Because we find that Ronald failed to show that any part of the award was compensation for loss of future earnings, and because there was evidence to support a finding that Ronald had secreted and squandered part of the settlement monies, we affirm the judgment.

### Background Facts

Alice and Ronald were married on March 6, 1971. Three children were born of the marriage. In October 1991, Ronald was injured on his job with Union Pacific Railroad.[1] He missed over two years of work because of injuries to a disc in his neck. Despite surgery, Ronald continues to experience pain in

---

1. There is a discrepancy in the record concerning the date of Ronald's injury. Ronald testified that he was injured in October 1991. Alice testified that he was injured in November 1992.

his neck. He returned to work as a clerical worker around the end of 1993 and continues to perform clerical duties for the railroad. The parties separated on October 11, 1994. Alice filed a petition for dissolution of the marriage on April 27, 1995. In November 1994, the month after Alice and Ronald had separated, Ronald received a net settlement of approximately $52,000.00 on his FELA claim against the railroad. Ronald did not tell Alice about the settlement until four or five months later. Ronald testified at trial that he had spent $28,000.00 of the sum. He claims that he spent the money paying off one son's wrecked car and buying a car for the parties' daughter. He also spent $4,200.00 on facial surgery. Ronald also claims that part of the money was spent for house payments and part for utilities. Ronald admitted that during a period of depression he had gambled away $4,000.00 or $5,000.00 of the money.

In the first set of interrogatories Alice sent to Ronald, Ronald's response, executed August 23, 1995, stated that he had not transferred any real or personal property in the previous twenty-four months. In his answers to the second set, executed August 28, 1995, he indicated that, in addition to having approximately $20,000.00 in an account in his and his son's name, he had created two other accounts in the names of his sons. He acknowledged he deposited $6,500.00 on May 5, 1995, in a separate account at the Missouri Pacific Credit Union bearing the name of his son, Ronald V. Heslop, II. Ronald further admitted that on April 7, 1995, he deposited $9,800.00 in a separate account at the Missouri Pacific Credit Union bearing the name of his other son, Jason S. Heslop.

After Ronald was injured, he did not work for all of 1993 and most of 1994. In 1994, Alice made $35,370.00 and Ronald made $8,000.00. During the time that Ronald was off work, Alice used $16,000.00 from a retirement account to pay marital bills. Ronald drew money under a wage continuation plan and from railroad unemployment; however, this money was reimbursed to the providers under his FELA settlement, leaving Ronald a net of approximately $52,000.00. Alice continued making second mortgage payments on the family home even after she had left, but ceased making these payments upon learning of the FELA settlement. At the time of trial, Ronald was making regular union scale.

### The Decree

The trial court divided the marital property and made the following findings:

The Court finds that the FELA award to the Respondent in the amount of $52,-135.54 was marital property. Respondent has spent a portion thereof, given a portion to the children of the marriage and retains the balance. No portion thereof has been received by Petitioner.

* * * *

**Petitioner** should be awarded the following items as her sole and absolute property, subject to any liens or encumbrances on any of said items which said liens or encumbrances should be paid by her and Respondent held harmless therefrom:

1991 Lincoln Town Car

Any accounts in any bank, credit union or other financial institution which are held in her name as of the date of the trial of this case.

Any life insurance policy upon which she is listed as the owner by the insurance company issuing said policy.

Any interest which she has in any pension or retirement fund through any credit union or employer of hers.

All personal property which is currently in her possession including or in addition thereto the following: dining table and chairs, server, pictures of children, ceramics made by wife's mother, food processor, dresser made in Arkansas, computer.

In addition to the property hereinabove listed, the Petitioner shall be granted a judgment in the amount of $45,000.00 against the Respondent for the purpose of achieving an equitable distribution of the marital property awarded herein.

**Respondent** should be awarded the following items as his sole and absolute property, subject to any liens or encumbrances on any of said items which said liens or

encumbrances should be paid by him and Petitioner held harmless therefrom:

The real estate and home located at 2405 Salem Court, Blue Springs, Missouri legally described as Lot 559 Kingsridge Subdivision Lot 463 through 517 and Lots 531 through 651, a subdivision in Jackson County, Missouri.

1993 Ford Van

Any accounts in any bank, credit union, savings and loan or other financial institution which are held in his name as of the date of trial.

Any life insurance polices on which he is carried as the owner by the issuing insurance company as of the date of trial.

Any interest he may have in any retirement or pension fund provided by a union or prior employer.

Any and all personal property currently in his possession with the exception of any specifically named items which are hereinabove set over to Petitioner.

Ronald points out that the amount awarded to Alice to equalize the distribution of property, $45,000.00, is approximately the sum of half of the equity in the house, $19,500.00, and half of the amount of the original FELA award, $26,000.00. The total of these two figures is $45,500.00.

## Standard of Review

In this court-tried case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Thus, the judgment of the trial court will be affirmed unless it is against the weight of the evidence, is not supported by substantial evidence, or it erroneously declares or applies the law. *Id.* at 32. We give due regard to the trial court's opportunity to judge the credibility of the witnesses

before it. *Central States Christian Endeavors Ass'n v. Nelson*, 898 S.W.2d 547, 548 (Mo. banc 1995). It is the trial court's job to resolve conflicts in the evidence. *Hudson v. Hudson*, 865 S.W.2d 405, 407 (Mo.App.1993). On appeal, this court considers only those facts and inferences favorable to the prevailing party. *Id.* The party challenging the decree has the burden of showing error. *Browning v. Browning*, 947 S.W.2d 106, 108 (Mo.App.1997). We will not set aside a judgment absent a firm belief that the judgment is wrong. *DeCapo v. DeCapo*, 915 S.W.2d 343, 346 (Mo.App.1996).

## No Statutory Provision Protects FELA Awards From Inclusion in Marital Property Estate

In his first point, Ronald argues that the trial court erred in finding the FELA award to be marital property and in ordering him to make a cash payment to Alice to equalize the property division. He maintains that the court should have determined that a portion of the award was for future lost wages and that such portion should have been determined to be nonmarital property.

The FELA statutes do not provide for exemption of FELA awards from the operation of state family laws relating to the division of property in dissolution actions. Missouri courts have determined that the Missouri statutes also provide no automatic exemption. *See, e.g., Gonzalez v. Gonzalez*, 689 S.W.2d 383, 385 (Mo.App.1985). The court in *Gonzalez* examined § 452.330, RSMo 1994, the statute defining marital property, and concluded that a FELA award is not a stated exception in the statute that would preclude it from being considered marital property.[2] *Id.* In *Gonzalez*,

---

2. Section 452.330, RSMo 1994 defines marital property. It provides, in pertinent part:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of

the husband argued that because his award was based on a federal FELA statute, the Supremacy Clause of the United States Constitution overrides state law and takes the award out of the marital estate. *Id.* at 385. The court rejected this argument noting that, unlike the Railroad Retirement Act of 1974, the FELA statutes do not demonstrate a federal intent that property rights created by the statute be exempt from the operation of state family laws. *Id.* at 385–86.[3]

### Missouri Courts Generally Apply the "Analytic Approach" In Determining Whether Such Property Should Be Classified As Marital

■ Having determined that the FELA award may be classified as marital property, we turn next to the question of whether the award *should* have been classified as marital property. Ronald suggests that use of the "analytic" approach would result in classification of the award as nonmarital. If the award is nonmarital, he reasons, the amount of marital property to be divided by the court would be reduced and Alice's share reduced accordingly. Alice argues that the analytic approach is inappropriate and that this court should follow the literal "mechanistic" approach adopted in *Nixon v. Nixon*, 525 S.W.2d 835 (Mo.App.1975). Failing that, however, Alice argues that analysis under the analytic approach results in the FELA award being classified as marital property.

The mechanistic approach to the classification of compensation awards is based upon the timing of the award. If the award or the right to receive the award accrued during the parties' marriage, the award is classified as marital property. Annotation, *Divorce and Separation: Workers' Compensation Benefits as Marital Property Subject to Distribution*, 30 A.L.R. 5th 139, 150 (1995). An alternative method of classification is known

as the analytic approach. *Id.* Under this approach, the focus is on what the award or benefit is intended to remedy. *Hudson*, 865 S.W.2d at 407. The court in *Hudson* suggested that Missouri courts favor the analytic approach to classification. *Id.*

The Eastern District began using an analytic approach in *Pauley v. Pauley*, 771 S.W.2d 105 (Mo.App.1989). The husband in *Pauley* received workers' compensation benefits in a lump sum prior to the entry of the dissolution decree but after the parties had separated. The husband's claim for benefits under the Second Injury Fund was still pending at the time that the decree of dissolution was entered. After a survey of cases from states adopting the analytic approach, the court held that the analytic approach was a more "enlightened" method of classification and "that the lump sum awards to husband of workers' compensation benefits and of the Second Injury Fund are nonmarital assets to be set aside to husband as his separate property to the extent these awards compensated husband for future loss of earnings that have accrued since the dissolution of the parties' marriage." *Id.* at 109–10.

In *Mistler v. Mistler*, 816 S.W.2d 241, 249–50 (Mo.App.1991), the Southern District followed the line of Missouri cases including *Pauley* and applied the analytic approach to a personal injury award. It noted a trend in the Missouri courts indicating a preference for replacement analysis in applying § 452.330 to property such as workers' compensation benefits, disability benefits and pension income. *Id.* at 249. In *Mistler,* the husband was permanently and totally disabled. Husband had been struck on the head with a three-ton steel beam while working at the Union Electric Power plant. He was left physically and mentally impaired. *Id.* at 244. Husband filed suit for workers' compensation and both husband and wife

---

marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

3. The *Gonzalez* decision, among others, was criticized in *Mistler v. Mistler*, 816 S.W.2d 241, 249 (Mo.App.1991), because of its use of the "mechanistic" method of property division. *Gonzalez* nevertheless still stands for the proposition that a FELA award can be considered marital property.

sued Union Electric. The suit was settled. Neither party contested the characterization of funds received before the dissolution as marital property; it was the post-dissolution payments that were at issue. *Id.* at 251. The court found that only a small portion of the settlement was attributable to the husband's lost earnings and that the settlement payments were primarily intended for post-settlement medical expenses. *Id.* at 250. So finding, the court found no error in the determination that the post-dissolution payments to the husband were nonmarital. *Id.* at 252. The Southern District has also applied the analytic approach to disability benefits. *See In re Marriage of Gilmore*, 943 S.W.2d 866, 875 (Mo.App.1997). This court has also approved the use of the analytic approach. *See Hudson*, 865 S.W.2d at 407. Ronald is correct in his assertion that the analytic approach to classification is used in Missouri.

## Under The Analytic Approach, Compensation For Loss of Future Earnings Is Nonmarital Property

■ In applying the analytic method we focus on what the award was designed to replace. Compensation for the loss of future earnings is classified as nonmarital; compensation is marital to the extent that it compensates for the loss of wages during the marriage. *Pauley*, 771 S.W.2d at 109–10. Ronald, as the party challenging the decree, has the burden of showing error. *Browning*, 947 S.W.2d at 108. Ronald claims that the order demonstrates error because it finds the entire amount to be marital property. Ronald fails to recognize the statutory presumption that all property acquired during the marriage is marital property. Ronald, as the appellant, must demonstrate that he proved by clear and convincing evidence that a portion of the settlement was nonmarital property. *Buckner v. Buckner*, 912 S.W.2d 65, 69 (Mo.App.1995).

## Ronald Did Not Demonstrate By Clear and Convincing Evidence That A Portion of the Settlement Was Nonmarital

■ Ronald was injured in November 1992. He did not go back to work until the later part of 1994. Monies paid to him by Railroad Unemployment were set off against his final settlement from the Railroad. Ronald testified that the settlement was for his injuries and that he was back working at the railroad. Alice, in her Interrogatories asked, "Do you have any disability or handicap that prevents you from working or holding any type or position?" Ronald answered, "No." Ronald was working and being paid union scale at the time of the hearing. Ronald testified that the injury to his neck was permanent, and that he had a heavy pain in his neck, shoulders and arm. He also had a work restriction against lifting any object over 10 pounds. While it is conceivable that the work restriction could bear on future promotion opportunities, Ronald failed to develop evidence supporting such a hypothesis. The testimony did not establish that any of the monies he received in settlement were for future lost earnings.

Ronald's situation differs from that of the injured spouses in *Mistler* and *Pauley*. In both cases, the husbands receiving the benefits were seriously disabled and unable to work. The evidence in both cases suggested that the awards and settlements were made partially to compensate for lost future earnings. In *Pauley*, for example, the husband was injured only three months before the parties' separation. *Pauley*, 771 S.W.2d at 110. In *Mistler*, the husband was physically and mentally impaired as a result of his injury. The *Mistler* court found that the settlement represented compensation for post-settlement medical expenses, past and future pain and suffering, and for the wife's loss of consortium. *Mistler*, 816 S.W.2d at 250–51. Moreover, the focus in *Mistler* was on post-dissolution payments; neither party challenged the trial court's determination that the payments received by the parties prior to the dissolution were marital property. *Id.* at 251. Because Ronald did not prove by clear and convincing evidence that the property in question, a portion of the FELA settlement award, was nonmarital, Point I is denied.

## Alice Was Required To Prove That Ronald Had Squandered Some Of The Settlement

■ In Point II, Ronald argues that the trial court erred in awarding one-half of the

FELA award to Alice because the evidence showed that only $24,000.00 of the award remained and there was no showing that Ronald squandered any of the award prior to the dissolution. As a rule, the value of the marital property is set as the value of the property on the date of trial. *Witt v. Witt*, 930 S.W.2d 500, 505 (Mo.App.1996). However, the trial court enjoys broad discretion in making determinations on issues relating to the squandering of assets, because it is in the better position to judge credibility. *Ray v. Ray*, 877 S.W.2d 648, 651 (Mo.App.1994). Therefore, where a court hears evidence showing that a spouse has secreted or squandered a marital asset in anticipation of a dissolution action, the court may hold that spouse liable for the squandered asset. *Witt*, 930 S.W.2d at 505. The spouse alleging that property has been squandered must present evidence on the issue or squandering will not be found and reimbursement will not be ordered. *Lawrence v. Lawrence*, 938 S.W.2d 333, 338 (Mo.App.1997).

### There Was Evidence To Support The Trial Court Ruling That Ronald Was Responsible For The Entire FELA Award

Ronald takes the position that the evidence showed that the majority of the settlement money was spent on college and automobiles for the children, normal and necessary expenses for the home, and for surgery on his face. Ronald contends that there is no evidence to show that he secreted or squandered all or part of the money. He points out that the trial court made no finding that a portion of the FELA award was squandered. However, all factual issues that lack specific findings in the judgment are considered to be in accordance with the result reached and this court will affirm the judgment if the result was correct on any rational basis. *Reed v. Reberry*, 883 S.W.2d 59, 61 (Mo.App.1994).

Alice filed for dissolution on April 27, 1995. On April 7, 1995 and May 5, 1995, Ronald transferred $16,300.00 to bank accounts bearing the names of his two sons. Ronald admitted at trial that he had gambled away four or five thousand dollars of the

settlement and spent a portion on facial surgery. The trial court noted that Ronald gave a "lot of disparate testimony about money and where it is and who took it." The court was not obligated to believe Ronald's explanations of how the money was spent. Moreover, Ronald did not tell Alice about the settlement for at least four months after he received the money. There is evidence supporting the inference that Ronald attempted to secrete a portion of the money. The trial court did not err in treating Ronald as responsible for the entire marital asset of $52,135.54. Point II is denied.

Judgment is affirmed.