Sean WOOD, Petitioner/Appellant,

v.

Jamie WOOD, Respondent/Respondent.

No. ED 85943.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 14, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 18, 2006.

Application for Transfer Denied
June 30, 2006.

Lawrence Gerard Gillespie, Clayton, MO, for appellant.

Jeanne Meyer Fox, Kirkwood, MO, for respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Sean Wood (Father) appeals from a Judgment of Dissolution of Marriage (Judgment). Father argues trial court error in issues related to child custody and

support and division of property. We affirm as modified.

### Factual and Procedural Background

Father and Jamie Wood (Mother) were married in December 1999 and separated in December 2002. Father filed a Petition for Dissolution of Marriage in March 2003. One child (Child) was born of the marriage in September 2002.

At the time of the marriage, Father had been employed by the Missouri State Highway Patrol (MSHP) as a highway patrolman for nearly three years. In 2000, his employment with the MSHP ended, and subsequently he was decertified as a police officer. In November 2000, Father filed a lawsuit for wrongful termination against the MSHP (the Lawsuit), which was pending at the time of the dissolution trial with no trial date set. Father could not place a value on the Lawsuit.

At the time Father's employment with the MSHP ended, he earned an annual salary of $32,000. From April 2000 to December 2001, Father also worked for a trucking company, earning an annual salary of $41,000. From August 2001 to December 2002, Father also worked for his own agency, earning an annual salary of $28,000. From July to December 2002, Father also worked for an insurance company, earning $12,000. Since July 2003, Father has been employed as an insurance agent, currently earning $2,500 per month in base salary and commissions.

Father has another minor child from a previous relationship for whom he is obligated to pay monthly child support in the amount of $300 for nine months of the year. Both Father and Mother testified that during the parties' marriage, Father's parents paid the support, but Father testified that he began paying it in September 2003. Father included the child support amount on his Statement of Income and Expenses and on his proposed Form 14.

In November 2004, the trial court entered its Judgment dissolving the parties' marriage. The court attached to its Judgment a Marital Settlement Agreement (Agreement) and a Parenting Plan,[1] entered into by the parties before trial, and a Form 14. In its Judgment, the court awarded "primary" legal and "primary" physical custody of Child to Mother. The Agreement provides for joint legal custody of Child pursuant to the terms of the Parenting Plan and for the primary residence of Child to be with Mother. The Agreement also provides for an award of primary physical custody of Child to Mother, that Mother is the residential parent for purposes of school pursuant to the Parenting Plan, and that Father has temporary custody and visitation of Child pursuant to the Parenting Plan.

The Parenting Plan provides specific times for physical custody and visitation for Father, including two weekends (forty-eight hours each) each month, one evening each week for three hours, two weeks, three weeks, and five weeks for the summers 2005, 2006, and 2007, respectively, and certain holidays. At all other times, Mother has physical custody and visitation. The Parenting Plan also specifies that Mother is the residential parent for purposes of school. The Parenting Plan further provides that the parties share legal custody; however, Mother is the arbiter of any final decisions on which the parties do not agree. Nonetheless, the Parenting Plan has a resolution of disputes paragraph that provides that if the parties

---

1. The trial court found the Agreement to be fair, equitable, and not unconscionable, and the court adopted and approved the Parenting Plan and found that it was in the best interest of Child.

share joint legal custody and are unable to agree upon a final decision, then the parties will attempt mediation and if that is unsuccessful, then they will submit the issue to the trial court.

The trial court ordered Father to pay to Mother monthly child support in the amount of $593. In its Judgment, the court found that prior to July 2003, Father had earned on average in excess of $3,000 per month and that Father has an earning capacity of $3,000 per month. The court then determined for purposes of calculating child support that Father's income is $3,000 per month. On the Form 14, prepared by Mother and adopted by the court, the court used the average of Father's monthly income for the last four years and calculated Father's monthly gross income to be $3,062. The court did not adjust Father's income for the child support he pays for his child from a previous relationship.

The Agreement set forth the division of separate and marital property. The Agreement did not designate the Lawsuit, or any portion thereof, as Father's separate property. However, the Agreement also provided that the parties "acknowledge that all marital property has been divided and assert that no other marital property remains to be divided by the Court." Nonetheless, at trial, the parties notified the court that it needed to determine "who gets the proceeds from [the Lawsuit]." The trial court concluded that marital property not divided by the Agreement included the Lawsuit, from which the proceeds, if any, the court found to have a marital component and as such, to be mari-

tal property. The court awarded each party one-half of the marital interest in the Lawsuit with an undetermined value.

## Standard of Review

■ The standard for reviewing a judgment of dissolution is the same for reviewing any court-tried action. *Bullard v. Bullard,* 929 S.W.2d 942, 944 (Mo.App. E.D. 1996). The judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Discussion

■ Father raises three points on appeal. In his first point, Father essentially argues that the trial court erred in awarding "primary" legal custody and "primary" physical custody, rather than "joint" legal custody and "joint" physical custody, of Child to Mother because such designations are a misstatement of the law and not reflective of the parties' intentions as indicated in the Agreement and the Parenting Plan.[2]

■ We agree with Father that the trial court erred in designating the custody arrangements as "primary." *See Malawey v. Malawey,* 137 S.W.3d 518, 524 (Mo.App. E.D.2004) (concluding the trial court erred in its denomination of custody arrangements as "primary"). Section 452.375.1(1)[3] defines "custody" as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof," and does not

---

**2.** Mother argues that because the parties settled the child custody issue before trial, we do not have jurisdiction to review Father's allegation of error on this issue. However, agreements between parents regarding minor children are only advisory. *Distler v. Distler,*

877 S.W.2d 184, 185 (Mo.App. W.D.1994). Therefore, appeal from the trial court's judgment regarding child custody is available.

**3.** All statutory references are to RSMo 2000, unless otherwise indicated.

use the phrases "primary legal custody" or "primary physical custody." The phrases "primary legal custody" and "primary physical custody" are misnomers, and their use should be avoided. *Peniston v. Peniston*, 161 S.W.3d 428, 431 (Mo.App. W.D. 2005); *see also Speer v. Colon*, 155 S.W.3d 60, 62 (Mo. banc 2005) ("Missouri's statutory scheme does not allow for an order granting 'primary physical custody.' ").

■ However, in order to obtain relief on appeal, a party must not only demonstrate error, but also prejudice. *LaRocca v. LaRocca*, 135 S.W.3d 522, 524 (Mo.App. E.D.2004). Designation as a joint custodian can have intrinsic value for a parent who believes that a stigma attaches when the other parent is named the primary or sole custodian, and thus Father may demonstrate prejudice. *See Id.* Therefore, we proceed with our consideration of Father's allegation of error.[4]

■ We first address the physical custody arrangement. Section 452.375.1(3) defines "joint physical custody" as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." The statute does not define sole physical custody. To determine the proper designation of a physical custody arrangement as joint or sole, we look to the periods of time each parent has for the care and supervision of the child. *Malawey*, 137 S.W.3d at 524. When the court orders significant periods of time where the child is under the care and supervision of each parent, the award is one of joint physical custody, regardless of how the court characterizes it. *Id.*

We conclude that the trial court awarded Father "significant" periods of time during which Child is under his care and supervision, as specified in the Parenting Plan, such that the physical custody award is actually one of joint physical custody. We also note that both the Agreement and the Parenting Plan specify that Mother will be the residential parent for purposes of school. This specification is required for joint physical custody arrangements pursuant to Section 452.375.5(1) and (2).

■ We next address the legal custody arrangement. Section 452.375.1(2) defines "joint legal custody" as "the parents shar[ing] the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." The statute does not define sole legal custody. Section 452.375.4 expresses a public policy of encouraging parents to participate in decisions affecting the health, education and welfare of their children, and orders the trial court to determine custody arrangements that best assure both parents participate in such decisions so long as it is in the best interests of the children. Joint legal custody is appropriate only where parents display the willingness and ability to share the rights and responsibilities of raising their children. *Malawey*, 137 S.W.3d at 525.

■ We conclude that although the trial court designated Mother as the primary legal custodian, the legal custody award is actually one of joint legal custody. The parties entered the Agreement and the Parenting Plan before trial, indicating a

---

4. We note that Father does not challenge the periods of time each parent has for the care and supervision of Child; rather, he only

challenges the designations used by the trial court in its custody award.

willingness and an ability to communicate with each other regarding the rights and responsibilities of raising Child. Further, the Agreement specifically provides for joint legal custody of Child pursuant to the terms of the Parenting Plan and the Parenting Plan provides that the parties will share legal custody of Child.

Rule 84.14 [5] allows the appellate court to "give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." On review, we may dispense with a remand and render judgment that should have been rendered by the trial court. *LaRocca*, 135 S.W.3d at 526. An appropriate case for such judgment is one where there is no dispute as to the facts but only a dispute as to their legal significance. *Id.* We can render the judgment that the trial court should have rendered when the record and evidence give us confidence in the reasonableness, fairness, and accuracy of the conclusion reached. *Id.*

Thus, although the trial court erred in designating Mother's physical and legal custody as "primary," we modify the judgment so that the custody arrangement is designated as joint physical custody and joint legal custody. We modify only the designation assigned to the custody arrangement and affirm the trial court's custody determinations in all other respects.

In his second point on appeal, Father argues that the trial court erred in awarding Mother half of the marital interest in the Lawsuit because the court failed to designate what components of the Lawsuit are separate and marital property and to set aside the separate component to Father and failed to indicate how the designation was made.

Section 452.330 provides in pertinent part that "the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property ... in such proportions as the court deems just after considering all relevant factors...." Under the analytic approach to classification of property under Section 452.330, we focus on what the property is intended to replace. *Heslop v. Heslop*, 967 S.W.2d 249, 254 (Mo.App. W.D.1998). To the extent the property compensates for losses to the marital estate, it is marital property. *Al–Yusuf v. Al–Yusuf*, 969 S.W.2d 778, 786 (Mo.App. W.D.1998). To the extent the property compensates for losses to a spouse's separate estate, it is the spouse's separate property. *Id.* For example, compensation is marital property to the extent that it compensates for the loss of wages during the marriage. *Heslop*, 967 S.W.2d at 254. Compensation for the loss of future earnings is nonmarital property. *Id.*

A statutory presumption exists that all property acquired by either spouse subsequent to the marriage is marital property. Section 452.330.2. The party challenging the presumption must demonstrate by clear and convincing evidence that property is nonmarital. *Heslop*, 967 S.W.2d at 254. We conclude that Father did not demonstrate by clear and convincing evidence that a portion of the Lawsuit proceeds, if any, are nonmarital property.

Regarding the Lawsuit, Father testified as follows during direct examination:

Q. Now, with your lawsuit, is there any claim for lost wages?

A. It's a—It's a lawsuit for violation of my constitutional rights and wrongful termination, yes.

Q. Are you claiming lost wages after the marriage?

5. All rule references are to Mo. R. Civ. P.2005, unless otherwise indicated.

A. Not after the marriage, no. It was just during the marriage.

Q. Are you claiming that you lost wages from your lawsuit after the marriage, after your marriage to [Mother]?

A. Depends on how long I would have—I would have worked for them. I have no idea. It's—It's—The lawsuit is based on wrongful termination and violation of whatever the Fourteenth—Fourth and Fourteenth Amendment, I believe.

During cross-examination, Father testified as follows:

Q. Okay. And the lawsuit is for wrongful termination, correct?

A. A portion of it, yes.

. . .

Q. Okay. And the lawsuit is for lost wages that you would have otherwise earned from the [MSHP], right?

A. I do—I cannot answer that.

Q. Okay. And you—Strike that. You understand that if there was any money from a lawsuit that was—that was either all or a portion of which was accrued during the marriage, that there may be a marital component to that lawsuit?

A. I don't understand that. No, I do not.

At the close of cross-examination, the trial court questioned Father as follows:

Q. Okay. [Father], did you say that you were asking for lost wages, the basis of your lawsuit is a—is a wrongful termination?

A. To be quite honest with Your Honor, I don't know exactly what is going on in that lawsuit anymore.

Q. I mean, what—

A. I have not—I have not asked for anything. It has all been done by—by the law team. I—and I don't—

Q. Okay. So you haven't asked for anything?

A. That there's—there's not been—

Q. So you're not asking that your job be restored or that you're being somehow compensated if you believe you were wrongfully fired from your job?

A. No—No monetary value has been set. No—

Q. That's not what—

A. No—

Q. That's not what I'm—I'm not saying whether or not they've given you one. I'm asking whether or not you were—what you're asking for. You sued them, so what are you asking for?

A. Well, I'm asking for—to be reinstated. That's—That's—

Q. Okay. So then you'd be add—you would want to be reinstated.

A. Well, I don't know if I'd want to be reinstated or not, but I'm—

Q. So then if you're not, then you want to be compensated for the lost wages that you—you said you were wrongfully terminated, is that right?

A. Actually, I want—I want my legal expenses paid.

Father also testified that his decertification as a police officer is "subject for reinstatement" and that is part of what the Lawsuit is about too. Mother testified that she believed that either all or a portion of the Lawsuit may be a marital asset, of which she requested half.

Father's employment with the MSHP ended during the marriage, and Father filed the Lawsuit during the marriage. Father testified that in the Lawsuit, he

was claiming lost wages during the marriage, but not after the marriage. Although Father expressed some uncertainty as to what specific relief he was seeking in the Lawsuit, the trial court was free to believe or disbelieve all, part or none of his testimony. *See Laffey v. Laffey,* 4 S.W.3d 655, 658 (Mo.App. W.D.1999). Further, Father did not offer into evidence his petition filed in the Lawsuit to assist the trial court in determining whether or not Father sought relief that might be classified as separate property. Based on the evidence before it, the trial court did not err in classifying the Lawsuit proceeds, if any, as marital property. The record contains sufficient evidence from which the trial court could find that the Lawsuit proceeds, if any, are marital property, and Father did not meet his burden of showing that a portion of the Lawsuit proceeds, if any, are nonmarital property. The trial court did not err in dividing the Lawsuit proceeds, if any, as it did, and Husband does not challenge the division of the marital property as being unjust. Accordingly, Father's point two on appeal is denied.

In his third point on appeal, Father argues that the trial court erred in the amount it ordered for child support because the court used a four-year average of Father's monthly gross income and the court failed to deduct from his income his child support payments for his child from a previous relationship.

■■■ In determining monthly gross income for purposes of child support calculation, the trial court is free to consider both past and present earnings to determine an average that is consistent with historical earnings and representative of future earnings. *Laubinger v. Laubinger,* 5 S.W.3d 166, 178–179 (Mo.App. W.D.1999). If the trial court's determination is within the range supported by the evidence, we cannot find that the determination is

against the weight of the evidence. *Id.* at 179.

■■■ Father argues that the trial court erred in using a four-year average of Father's income because the average included periods when he was employed by the MSHP and since he has been decertified as a police officer, he is not presently capable of earning the income that he did while with the MSHP. We are not persuaded by this argument. Father earned comparable or greater income from employment subsequent to his employment with the MSHP, such that his decertification as a police officer does not support his argument for not including his income with the MSHP to determine an average income. Further, the trial court's determination of Father's monthly gross income is within the range supported by the evidence.

Regarding Father's other child support obligation, according to Form 14 and its Directions and Comments for Use, the trial court is to adjust a parent's monthly gross income for other court or administratively ordered child support to the extent of the amounts actually being paid. Although Mother did not dispute that Father has an obligation, Father did not offer into evidence any court or administrative order indicating his support obligation for his child from a previous relationship. Thus, the obligation may be an agreement between the parties rather than a legally binding order. Further, the trial court was free to disbelieve Father's testimony that he, rather than his parents, is now paying the support obligation. *See Laffey,* 4 S.W.3d at 658. Father suggests that even if his parents are continuing to pay the support obligation, he is still entitled to an adjustment because the "fact that he is able to accomplish it entitles him to the credit." Father compares the situation to a loan. We find no similarity in that Fa-

ther presented no evidence of having to reimburse his parents.

Accordingly, the trial court did not err in the amount it ordered for child support. Father's point three on appeal is denied.

## Conclusion

The Judgment of the trial court is affirmed as modified.

NANNETTE A. BAKER, P.J., and ROBERT G. DOWD, JR., J., concur.